## CHY LUNG *v.* FREEMAN ET AL.

1. The statute of California, which is the subject of consideration in this case, does not require a bond for every passenger, or commutation in money, as the statutes of New York and Louisiana do, but only for certain enumerated classes, among which are "lewd and debauched women."

2. But the features of the statute are such as to show very clearly that the purpose is to extort money from a large class of passengers, or to prevent their immigration to California altogether.

3. The statute also operates directly on the passenger; for, unless the master or owner of the vessel gives an onerous bond for the future protection of the State against the support of the passenger, or pays such sum as the Commissioner of Immigration chooses to exact, he is not permitted to land from the vessel.

4. The powers which the commissioner is authorized to exercise under this statute are such as to bring the United States into conflict with foreign nations, and they can only belong to the Federal government.

5. If the right of the States to pass statutes to protect themselves in regard to the criminal, the pauper, and the diseased foreigner, landing within their

borders, exists at all, it is limited to such laws as are absolutely necessary for that purpose ; and this mere police regulation cannot extend so far as to prevent or obstruct other classes of persons from the right to hold personal and commercial intercourse with the people of the United States.

6. The statute of California, in this respect, extends far beyond the necessity in which the right, if it exists, is founded, and invades the right of Congress to regulate commerce with foreign nations, and is therefore void.

ERROR to the Supreme Court of the State of California.

*Mr. Attorney-General Pierrepont* for the plaintiff in error.

No opposing counsel.

MR. JUSTICE MILLER delivered the opinion of the court.

While this case presents for our consideration the same class of State statutes considered in *Henderson et al.* v. *Mayor of the City of New York et al.*, and *Commissioners of Immigration* v. *North German Lloyd, supra,* p. 259, it differs from them in two very important points.

These are, *First,* The plaintiff in error was a passenger on a vessel from China, being a subject of the Emperor of China, and is held a prisoner because the owner or master of the vessel who brought her over refused to give a bond in the sum of $500 in gold, conditioned to indemnify all the counties, towns, and cities of California against liability for her support or maintenance for two years.

*Secondly,* The statute of California, unlike those of New York and Louisiana, does not require a bond for *all* passengers landing from a foreign country, but only for classes of passengers specifically described, among which are "lewd and debauched women ;" to which class it is alleged plaintiff belongs.

The plaintiff, with some twenty other women, on the arrival of the steamer "Japan" from China, was singled out by the Commissioner of Immigration, an officer of the State of California, as belonging to that class, and the master of the vessel required to give the bond prescribed by law before he permitted them to land. This he refused to do, and detained them on board. They sued out a writ of *habeas corpus,* which by regular proceedings resulted in their committal, by order of the Supreme Court of the State, to the custody of the sheriff of the county and city of San Francisco, to await the return of the "Japan," which had left the port pending the progress of

the case; the order being to remand them to that vessel on her return, to be removed from the State.

All of plaintiff's companions were released from the custody of the sheriff on a writ of *habeas corpus* issued by Mr. Justice Field of this court. But plaintiff by a writ of error brings the judgment of the Supreme Court of California to this court, for the purpose, as we suppose, of testing the constitutionality of the act under which she is held a prisoner. We regret very much, that, while the Attorney-General of the United States has deemed the matter of such importance as to argue it in person, there has been no argument in behalf of the State of California, the Commissioner of Immigration, or the Sheriff of San Francisco, in support of the authority by which plaintiff is held a prisoner; nor have we been furnished even with a brief in support of the statute of that State.

It is a most extraordinary statute. It provides that the Commissioner of Immigration is "to satisfy himself whether or not any passenger who shall arrive in the State by vessels from any foreign port or place (who is not a citizen of the United States) is lunatic, idiotic, deaf, dumb, blind, crippled, or infirm, and is not accompanied by relatives who are able and willing to support him, or is likely to become a public charge, or has been a pauper in any other country, or is from sickness or disease (existing either at the time of sailing from the port of departure or at the time of his arrival in the State) a public charge, or likely soon to become so, or is a convicted criminal, or a lewd or debauched woman;" and no such person shall be permitted to land from the vessel, unless the master or owner or consignee shall give a separate bond in each case, conditioned to save harmless every county, city, and town of the State against any expense incurred for the relief, support, or care of such person for two years thereafter.

The commissioner is authorized to charge the sum of seventy-five cents for every examination of a passenger made by him; which sum he may collect of the master, owner, or consignee, or of the vessel by attachment. The bonds are to be prepared by the commissioner, and two sureties are required to each bond; and, for preparing the bond, the commissioner is allowed to charge and collect a fee of three dollars; and for each oath ad-

ministered to a surety, concerning his sufficiency as such, he may charge one dollar. It is expressly provided that there shall be a separate bond for each passenger; that there shall be two sureties on each bond, and that the same sureties must not be on more than one bond; and they must in all cases be residents of the State.

If the ship-master or owner prefers, he may commute for these bonds by paying such a sum of money as the commissioner may in each case think proper to exact; and, after retaining twenty per cent of the commutation-money for his services, the commissioner is required once a month to deposit the balance with the Treasurer of the State. See c. 1, art. 7, of the Political Code of California, as modified by sect. 70 of the amendments of 1873, 1874.

It is hardly possible to conceive a statute more skilfully framed, to place in the hands of a single man the power to prevent entirely vessels engaged in a foreign trade, say with China, from carrying passengers, or to compel them to submit to systematic extortion of the grossest kind.

The commissioner has but to go aboard a vessel filled with passengers ignorant of our language and our laws, and without trial or hearing or evidence, but from the external appearances of persons with whose former habits he is unfamiliar, to point with his finger to twenty, as in this case, or a hundred if he chooses, and say to the master, "These are idiots, these are paupers, these are convicted criminals, these are lewd women, and these others are debauched women. I have here a hundred blank forms of bonds, printed. I require you to fill me up and sign each of these for $500 in gold, and that you furnish me two hundred different men, residents of this State, and of sufficient means, as sureties on these bonds. I charge you five dollars in each case for preparing the bond and swearing your sureties; and I charge you seventy-five cents each for examining these passengers, and all others you have on board. If you don't do this, you are forbidden to land your passengers under a heavy penalty. But I have the power to commute with you for all this for any sum I may choose to take in cash. I am open to an offer; for you must remember that twenty per cent of all I can get out of you goes into my own pocket, and the remainder into the treasury of California."

If, as we have endeavored to show in the opinion in the preceding cases, we are at liberty to look to the effect of a statute for the test of its constitutionality, the argument need go no further.

But we have thus far only considered the effect of the statute on the owner of the vessel.

As regards the passengers, sect. 2963 declares that consuls, ministers, agents, or other public functionaries, of any foreign government, arriving in this State in their *official capacity*, are exempt from the provisions of this chapter.

All other passengers are subject to the order of the Commissioner of Immigration.

Individual foreigners, however distinguished at home for their social, their literary, or their political character, are helpless in the presence of this potent commissioner. Such a person may offer to furnish any amount of surety on his own bond, or deposit any sum of money; but the law of California takes no note of him. It is the master, owner, or consignee of the vessel alone whose bond can be accepted; and so a silly, an obstinate, or a wicked commissioner may bring disgrace upon the whole country, the enmity of a powerful nation, or the loss of an equally powerful friend.

While the occurrence of the hypothetical case just stated may be highly improbable, we venture the assertion, that, if citizens of our own government were treated by any foreign nation as subjects of the Emperor of China have been actually treated under this law, no administration could withstand the call for a demand on such government for redress.

Or, if this plaintiff and her twenty companions had been subjects of the Queen of Great Britain, can any one doubt that this matter would have been the subject of international inquiry, if not of a direct claim for redress? Upon whom would such a claim be made? Not upon the State of California; for, by our Constitution, she can hold no exterior relations with other nations. It would be made upon the government of the United States. If that government should get into a difficulty which would lead to war, or to suspension of intercourse, would California alone suffer, or all the Union? If we should conclude that a pecuniary indemnity was proper as a satisfaction for the

injury, would California pay it, or the Federal government? If that government has forbidden the States to hold negotiations with any foreign nations, or to declare war, and has taken the whole subject of these relations upon herself, has the Constitution, which provides for this, done so foolish a thing as to leave it in the power of the States to pass laws whose enforcement renders the general government liable to just reclamations which it must answer, while it does not prohibit to the States the acts for which it is held responsible?

The Constitution of the United States is no such instrument. The passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States. It has the power to regulate commerce with foreign nations: the responsibility for the character of those regulations, and for the manner of their execution, belongs solely to the national government. If it be otherwise, a single State can, at her pleasure, embroil us in disastrous quarrels with other nations.

We are not called upon by this statute to decide for or against the right of a State, in the absence of legislation by Congress, to protect herself by necessary and proper laws against paupers and convicted criminals from abroad; nor to lay down the definite limit of such right, if it exist. Such a right can only arise from a vital necessity for its exercise, and cannot be carried beyond the scope of that necessity. When a State statute, limited to provisions necessary and appropriate to that object alone, shall, in a proper controversy, come before us, it will be time enough to decide that question. The statute of California goes so far beyond what is necessary, or even appropriate, for this purpose, as to be wholly without any sound definition of the right under which it is supposed to be justified. Its manifest purpose, as we have already said, is, not to obtain indemnity, but money.

The amount to be taken is left in every case to the discretion of an officer, whose cupidity is stimulated by a reward of one-fifth of all he can obtain.

The money, when paid, does not go to any fund for the benefit of immigrants, but is paid into the general treasury of the State, and devoted to the use of all her indigent citizens.

The blind, or the deaf, or the dumb passenger is subject to contribution, whether he be a rich man or a pauper. The patriot, seeking our shores after an unsuccessful struggle against despotism in Europe or Asia, may be kept out because there his resistance has been adjudged a crime. The woman whose error has been repaired by a happy marriage and numerous children, and whose loving husband brings her with his wealth to a new home, may be told she must pay a round sum before she can land, because it is alleged that she was debauched by her husband before marriage. Whether a young woman's manners are such as to justify the commissioner in calling her lewd may be made to depend on the sum she will pay for the privilege of landing in San Francisco.

It is idle to pursue the criticism. In any view which we can take of this statute, it is in conflict with the Constitution of the United States, and therefore void.

*Judgment reversed, and the case remanded, with directions to make an order discharging the prisoner from custody.*