THE PEOPLE OF THE STATE OF NEW YORK, Plaintiffs, *against* HENRY W. O. EDYE *et al.*, Defendants.

(Decided June 5th, 1882.)

The act of 1881, providing for the inspection of the persons and effects of emigrants arriving by vessel at the port of New York from any foreign country (L. 1881, c. 427, p. 585), is not, within the meaning of the constitution of the United States, (Art. I., § 10, cl. 2), an inspection law, for the execution of which the state may lay *imposts or duties on imports or exports*; and the subsequent "act to raise money for the execution of the inspection laws of the State of New York" (L. 1881, c. 432, p. 590), which levies a duty on every alien passenger coming by vessel from a foreign port to the port of New York, infringes the exclusive right of Congress to regulate commerce, and is void.

EXCEPTIONS taken at a trial term of this court and ordered to be heard in the first instance at the General Term.

The action was brought to recover from the defendants,

as consignees and agents of vessels which had brought alien passengers from foreign ports to the port of New York, the amount of the duty imposed upon such passengers (by L. 1881, c. 431, p. 590) and remaining unpaid, with the penalties for default in payment. At the trial, the facts being admitted, the court directed the jury to find a verdict for the plaintiffs for the whole amount claimed and interest, and ordered that the exceptions taken by the defendants should be heard in the first instance at the General Term, and that in the mean time judgment be suspended.

*P. J. Joachimsen*, for defendants.

*Lewis N. Sanders* and *George N. Sanders*, for plaintiffs.

VAN HOESEN, J.—Clause two of section ten of article one of the constitution of the United States concedes the right of the states to lay duties or imposts on imports and exports for the purpose of defraying the expenses of executing inspection laws; and the plaintiff contends that chapter 427 of the laws of 1881 is an inspection law, within the meaning of the constitution. The act in question provides for the inspection of the persons and the effects of emigrants arriving by vessel at the port of New York. The first inquiry that presents itself, is, does the constitution provide for the levying of duties for the purpose of meeting the cost of inspecting the persons of immigrants? The constitution refers to imports and exports in connection with inspection laws, and it is conceded that imports and exports are the things to be inspected. Having made this concession, the plaintiff assumes the burden of showing that immigrants are imports; for, if they be not, it follows that the act of 1881 cannot be upheld on the ground that it is an inspection law.

The plaintiff's main reliance is upon the first clause of section nine of article one of the constitution, which provides that the migration or importation of such persons as any of the states now existing shall think proper to admit,

shall not be prohibited by Congress prior to the year 1808; but a tax or duty may be imposed on such importation. From this language the plaintiff argues that persons are mentioned in the constitution as subjects of importation, and that if they be subjects of importation they must be imports. This argument may be specious, but it is utterly unsound. It is a matter of common learning that section nine of article one refers to the importation of African slaves only. It makes a distinction between migration and importation. The importation of persons might be subjected to a tax or duty, but the migration of persons could not be (Elliott's Debates, vol. 2, p. 453). This distinction is most significant, and it seems to me to be fatal to the argument of those who contend that a tax may be laid upon immigrants as such. But this is not all; only the importation of persons could be taxed, and when Congress prohibited the importation of slaves, there was no longer any authority anywhere for levying a duty upon the importation of persons. I am aware that Judge WAYNE and Judge MACKINLEY said, in their opinions in *The Passenger Cases*, that the use of the word migration showed that other persons than slaves might be imported, but they cited no authority in support of their views, and their *dictum* is in opposition to the opinion of MADISON, of Chief Justice TANEY, of Judge STORY and of every standard writer on American constitutional law. Although Judges MACKINLEY and WAYNE supposed that free men might under section nine be regarded as imports, they both explicitly declared that such importations could be taxed only by Congress, and that under no pretense whatever could the states lay any duty or impost upon them. This result, those judges declared, necessarily followed from the language of section nine. To hold that immigrants were imports would not, therefore, aid the plaintiffs, for if they were, the state could not lay a tax upon them as such. But there is no reason whatever for regarding the word imports as applicable to human beings. The ablest judges who have ever occupied

the bench of the United States Supreme Court have said that only personal property can be an import or an export. Property that is to be either imported or exported may be inspected by state authority, and imposts and duties may be laid upon it by the state to pay the expenses of such inspection.

It is a mistake to suppose that the right to prevent the incoming of persons or of goods of a character likely to injure the community is derived from or at all connected with the right of executing inspecting laws. Inspection of goods is merely a precaution intended to improve the quality of articles of traffic. The power to turn away paupers, criminals or persons afflicted with pestilential diseases, and to prevent the introduction of infected articles likely to spread contagion, is not founded upon considerations of commercial advantage, but upon the inalienable right of self-defense—a right possessed by states as well as by individual men. That right has not its origin in the constitution, nor in that instrument will any clause be found by which it is to be regulated. The clause of section ten which recognizes the right of the state to execute its inspecting laws has no bearing on the question of the constitutionality of the act of 1881. There may be an inspection of the persons and the effects of passengers for the purpose of ascertaining whether any of those arriving on a vessel are, by reason of their criminal character, their pauperism, or their maladies, unfit to be received as dwellers in this state, and it may be that the expenses of such inspection should not be borne by the citizens of this state; but the right to make the inspection springs solely from the right of self-defense, which is inherent in the state, and the right to collect the expenses of the inspection from alien passengers who come here for the first time, if such a right exist, is not derived from the constitution of the United States.

In the earlier cases it was assumed, by all the distinguished judges of the Supreme Court of the United States, that the state unquestionably had the right to prevent the

ingress of criminals and paupers. That right was likened to the right every state possesses of establishing quarantine. In some of the cases it was said, that as the state could require vessels, cargoes and passengers to bear the expenses of the quarantine, so could it require vessel owners and passengers to pay the expenses of an inquiry as to whether any of the passengers were unfitted to become residents of this country. In some of the more recent cases some of the judges of the Supreme Court have said that there should be uniform laws regulating the qualifications for admission to residence in the United States, and that it was for Congress alone, and not for any of the states, to determine who should and who should not land upon American soil. In all the cases the doctrine is laid down that the law of self-defense has its limits, and that as the power to exclude criminals and paupers rests upon the right of self-defense, the state cannot exclude any person, or impose any tax as an incident to the enforcement of the right of self-defense, without showing that it has not gone farther than was necessary for its protection. The recent utterances of some of the judges make it impossible to foretell what the decision of the Federal Supreme Court may yet be as to the right of a state to prohibit the entrance of foreign criminals and paupers within her boundaries; but, nevertheless, it is clear that, though the state may have that right, it cannot, in exercising it, impose a tax upon every alien passenger arriving for the first time at New York, because such a tax is, under the decisions of the Supreme Court, a regulation of commerce, and the right to regulate commerce belongs exclusively to Congress.

I have not thought it necessary to cite any authorities, or to make any extracts from reported decisions, but the following cases warrant every observation I have made. *Gibbons* v. *Ogden* (9 Wheat. 1); *Passenger Cases* (7 How. 475–478 and 412); *Henderson* v. *Mayor* (92 U. S. 271); *Railroad Co.* v. *Husen* (95 U. S. 465, 473); *Chy Lung* v. *Freeman* (92 U. S. 275); Story on the Constitution (§ 1033).

The exceptions must be sustained, and judgment rendered in favor of the defendants.

BEACH, J., concurred.

Exceptions sustained, and judgment ordered for defendants.