*In re* LEE SING *et al*

*In re* SING TOO QUAN *et al.*

(*Circuit Court, N. D. California.* August 25, 1890.)

MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW.

The ordinance enacted by the city of San Francisco, known as the "Bingham Ordinance," which requires all Chinese inhabitants to remove from the portion of the city theretofore occupied by them, outside the city and county of San Francisco, or to another designated part of the city and county, is void as being in direct conflict with the constitution, treaties, and statutes of the United States, particularly in the sense that it is *discriminating* and *unequal* in its operation, and an arbitrary confiscation of property without due process of law.

At Law.

The ordinance under which the arrest was made is as follows:

"Order No. 2190 designating the location and the district in which Chinese shall reside and carry on business in this city and county.

"The people of the city and county of San Francisco do hereby ordain as follows:

"Section 1. It is hereby declared to be unlawful for any Chinese to locate, reside, or carry on business within the limits of the city and county of San Francisco, except in that district of said city and county hereinafter prescribed for their location.

"Sec. 2. The following portions of the city and county of San Francisco are hereby set apart for the location of all Chinese who may desire to reside, locate, or carry on business within the limits of said city and county of San Francisco, to-wit: Within that tract of land described as follows: Commencing at the intersection of the easterly line of Kentucky street with the south-westerly line of First avenue; thence south-easterly along the south-westerly line of First avenue to the north-westerly line of I street; thence south-westerly along the north-westerly line of I street to the south-westerly line of Seventh avenue; thence north-westerly along the south-westerly line of Seventh avenue to the south-easterly line of Railroad avenue; thence north-easterly along the south-easterly line of Railroad avenue to Kentucky street; thence northerly along the easterly line of Kentucky street to the south-westerly line of First avenue and place of commencement.

"Sec. 3. Within sixty days after the passage of this ordinance all Chinese now located, residing in or carrying on business within the limits of said city and county of San Francisco shall either remove without the limits of said city and county of San Francisco or remove and locate within the district of said city and county of San Francisco herein provided for their location.

"Sec. 4. Any Chinese residing, locating, or carrying on business within the limits of the city and county of San Francisco contrary to the provisions of this order shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment in the county jail for a term not exceeding six months.

"Sec. 5. It is hereby made the duty of the chief of police and of every member of the police department of said city and county of San Francisco to strictly enforce the provisions of this order.

"And the clerk is hereby directed to advertise this order as required by law.

"In board of supervisors, San Francisco, February 17, 1890.

"Passed for printing by the following vote: Ayes—Supervisors Bingham,

Wright, Boyd, Pescia, Bush, Ellert, Wheelan, Becker, Pilster, Kingwell, Barry, Noble."

*Thos. D. Riordan*, for petitioners.
*John I. Humphreys*, for the City.
Before SAWYER, Circuit Judge.

SAWYER, J. The petitioners are under arrest for the violation of order No. 2190, commonly called the "Bingham Ordinance," requiring all Chinese inhabitants to remove from the portion of the city heretofore occupied by them, outside the city and county, or to another designated part of the city and county.

Article 14, § 1, of the constitution of the United States reads as follows:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction, the equal protection of the laws."

Article 6 of the Burlingame treaty with China, provides, that

"Chinese subjects, visiting or residing in the United States, shall enjoy the same privileges, immunities and exemptions, in respect to travel or residence, as may there be enjoyed by the citizens or subjects of the most favored nation." 16 St. 740.

Section 1977 of the Revised Statutes of the United States provides as follows:

"All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

And article 6, subd. 2, of the national constitution provides, that, "this constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

The discrimination against Chinese, and the gross inequality of the operation of this ordinance upon Chinese, as compared with others, in violation of the constitutional, treaty, and statutory provisions cited, are so manifest upon its face, that I am unable to comprehend how this discrimination and inequality of operation, and the consequent violation of the express provisions of the constitution, treaties and statutes of the United States, can fail to be apparent to the mind of every intelligent person, be he lawyer or layman.

The ordinance is not aimed at any particular vice, or any particular unwholesome or immoral occupation, or practice, but it declares it "to

be unlawful for any Chinese to locate, reside or carry on business within the limits of the city and county of San Francisco, except in that district of said city and county hereinafter provided for their location."

It further provides that "within sixty days after the passage of this ordinance all Chinese now located, residing or carrying on business within the limits of said city and county of San Francisco, shall either remove without the limits of said city and county of San Francisco, or remove and locate within the district of the city and county of San Francisco, herein provided for their location." And again, section 4 provides that "any Chinese residing, locating, or carrying on business within the limits of the city and county, contrary to the provisions of this order, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by imprisonment in the county jail for a term not exceeding six months. Upon what other people are these requirements, disabilities and punishments imposed? Upon none.

The obvious purpose of this order, is, to forcibly drive out a whole community of twenty-odd thousand people, old and young, male and female, citizens of the United States, born on the soil, and foreigners of the Chinese race, moral and immoral, good, bad, and indifferent, and without respect to circumstances or conditions, from a whole section of the city which they have inhabited, and in which they have carried on all kinds of business appropriate to a city, mercantile, manufacturing, and otherwise, for more than 40 years. Many of them were born there, in their own houses, and are citizens of the United States, entitled to all the rights, and privileges under the constitution and laws of the United States, that are lawfully enjoyed by any other citizen of the United States. They all, without distinction or exception, are to leave their homes and property, occupied for nearly half a century, and go, either out of the city and county, or to a section with prescribed limits, within the city and county, not owned by them, or by the city. This, besides being discriminating, against the Chinese, and unequal in its operation as between them and all others, is simply an arbitrary confiscation of their homes and property, a depriving them of it, without due process or any process of law. And what little there would be left after abandoning their homes, and various places of business would again be confiscated in compulsorily buying lands in the only place assigned to them, and which they do not own, upon such exorbitant terms as the present owners with the advantage given them would certainly impose. It must be that or nothing. There would be no room for freedom of action, in buying again. They would be compelled to take any lands, upon any terms, arbitrarily imposed, or get outside the city and county of San Francisco.

That this ordinance is a direct violation, of, not only, the express provisions of the constitution of the United States, in several particulars, but also of the express provisions of our several treaties with China, and of the statutes of the United States, is so obvious, that I shall not waste more time, or words in discussing the matter. To any reasonably intelligent and well-balanced mind, discussion or argument would be wholly

unnecessary and superfluous. To those minds, which are so constituted, that the invalidity of this ordinance is not apparent upon inspection, and comparison with the provisions of the constitution, treaties and laws cited, discussion or argument would be useless. The authority to pass this order is not within any legitimate police power of the state. See, *In re Tie Loy*, 11 Sawy. 472, 26 Fed. Rep. 611; *In re Ah Fong*, 3 Sawy. 144; *Chy Lung* v. *Freeman*, 92 U. S. 275; *In re Quong Woo*, 7 Sawy. 531, 13 Fed. Rep. 229; *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 Sup. Ct. Rep. 1064; *Ho Ah Kow* v. *Numan*, 5 Sawy. 552.

Let the order be adjudged to be void, as being in direct conflict with the constitution, treaties, and statutes, of the United States, and let the petitioners be discharged.