### In re DAVENPORT.

(Circuit Court, D. Washington, E. D. June 15, 1900.)

1. JURISDICTION OF FEDERAL COURTS—HABEAS CORPUS—DISCHARGE OF STATE PRISONERS.

A federal court has, and should exercise, the power to discharge on a writ of habeas corpus a person held in confinement by state authorities for an act which involves no moral turpitude, and is only claimed to be unlawful because prohibited by a state statute, which, if construed to make such act an offense, is in violation of the constitution of the United States.

2. INTERSTATE COMMERCE—STATE LEGISLATION AFFECTING—CONSTITUTIONALITY.

The authority of a state to enact laws which operate as a restraint upon interstate commerce is limited to measures which are within its legitimate police powers, and are reasonably necessary for the protection of its citizens or their property. A state has no power to forbid traffic in game

imported from another state where it was lawfully killed, and the claim that the prohibition will aid local officers in detecting violations of its game laws is ineffectual to overcome the objection to the constitutionality of such a statute.

Petition for Writ of Habeas Corpus. Case argued and submitted on the petition and return. Petitioner discharged.

Forster & Wakefield, for petitioner.
Mount & Merritt, for respondent.

HANFORD, District Judge. By the record in this case it appears that the petitioner, L. M. Davenport, is a citizen of the state of Washington, and is the keeper of a restaurant in the city of Spokane. Upon an information accusing him of violating a statute of this state enacted for the protection of wild game, filed in the superior court of the state of Washington for Spokane county, a warrant in due form was issued out of said superior court, and the petitioner was arrested by the sheriff, and imprisoned awaiting trial. Thereupon he filed his petition in this court invoking the power of this court to release him from imprisonment by a writ of habeas corpus. A writ was issued and served. The sheriff has made a return setting forth the warrant, together with a copy of the information, and an agreed statement of facts upon which the information is founded, in the form of a stipulation signed by attorneys in behalf of the state of Washington and by the defendant's attorneys. The material part of said stipulation is as follows:

"That the said L. M. Davenport is a resident of the city of Spokane, Spokane county, state of Washington, and that he is conducting a restaurant in said city, and that on the 1st day of March, 1900, he had in his possession in said county and state, and offered for sale and sold therein, as a portion of a meal, one quail, and that the said quail was a portion of a box of quail that the said Davenport had purchased in the city of St. Louis, state of Missouri, and caused to be shipped into the state of Washington, and that the said quail, when taken in the state of Missouri, was lawfully taken under the laws of said state."

The statute upon which the prosecution of the petitioner is founded reads as follows:

"Every person who shall offer for sale or market, or sell or barter, any moose, elk, caribou, killed in this state, antelope, mountain sheep or goat, deer, or the hide or skin of any moose, elk, deer or caribou, or any grouse, pheasant, ptarmigan, partridge, sage hen, prairie chicken or quail at any time of the year, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished as hereinafter provided." Laws Wash. 1899, p. 278, § 3.

The grounds upon which the petitioner asks for the protection of the federal court are that he is being deprived of his liberty without due process of law, in violation of the fifth and fourteenth amendments to the constitution of the United States, because the act for which he is being prosecuted is not criminal, unless the state law above quoted shall be so construed as to make it a misdemeanor for a restaurant keeper in this state to cook and serve to his customers wild game lawfully captured in another state, and lawfully imported into this state, and, if thus construed, the act is an attempt to restrain interstate commerce, and for that reason void. It is the petitioner's contention that the statute does not apply to sales of

game not killed or taken within this state, or, if the statute is applicable to the case in hand, it is unconstitutional, and in either case he is being imprisoned as if he were a criminal, although the act which is the basis of the charge against him is not malum in se, nor a violation of any valid statute.

At the outset, the respondent questions the propriety of this court taking cognizance of the case. It is insisted that the point to be decided touches the sovereignty of the state; that a statute of the state must be construed, and the supreme court of the state is the tribunal specially authorized to determine finally all disputed questions as to the true interpretation and meaning of the state laws, and as to their application to particular cases; that it is a misuse of the writ of habeas corpus for a federal court, having no appellate or supervisory jurisdiction over proceedings of the state courts, to issue that form of process for the purpose of controlling or defeating prosecutions under the penal laws of the state, and for these reasons the petitioner should be remanded, and left to submit all questions as to his rights under the constitution of the United States to be first determined by the state courts, and to apply to the supreme court of the United States by writ of error for redress in case any right which he claims under the constitution and laws of the United States should be denied to him by the courts of the state. I can readily assent to the several propositions advanced by counsel for the state of Washington in this part of their defense as separate and abstract propositions, but to the aggregation, as a conclusion applicable to this case, I do not assent. It is settled by the decisions of the supreme court that in granting or refusing the writ of habeas corpus, when applied, for by persons accused or convicted of crimes under state laws, the circuit and district courts of the United States are required to exercise sound discretion, and these courts are not to assume the burden of deciding whether accused persons are guilty or not guilty of acts which are criminal, nor interfere with the state government in the enforcement of its criminal laws, in any endeavor to control the decision of questions of practice, or as to the validity of statutes alleged to be repugnant to the constitution of the state, and this court has steadfastly refused to consider the petitions of persons convicted of such crimes as murder, rape, and embezzlement. In re Friedrich (C. C.) 51 Fed. 747; Id., 149 U. S. 70–78, 13 Sup. Ct. 793, 37 L. Ed. 653; In re Moore (C. C.) 81 Fed. 356; In re Considine (C. C.) 83 Fed. 157. But there is no moral wrong in the act of which the petitioner in this case is accused, and he is innocent of any offense, unless effect be given to the statute so as to deprive him of the right to import from other states supplies for his restaurant which are not in themselves unwholesome nor deleterious to the health, morals, or manners of the people. As the question of first importance in the case is whether the statute upon which the prosecution is based is repugnant to the constitution of the United States, the case is a proper one for the federal court to deal with in the first instance; for, if the state has assumed to enact a law which violates the supreme law of the land, it is the business of the federal courts within the state to protect individuals from being subjected

to prosecutions which amount simply to persecutions, and are violative of the rights guarantied by the national constitution.

It is unreasonable to presume that the legislature of the state of Washington intended to enact a law to prevent the slaughter of game in the state of Missouri, and the title of the statute under consideration shows that its object was to restrain the destruction of wild animals and birds within the state of Washington. Nevertheless the prosecuting officers of the state, and the attorneys specially employed to prosecute this petitioner, insist that the statute above quoted was intended by the legislature to be as broad as its words indicate, and that, within the letter and spirit of the law, it is a misdemeanor to sell within this state birds lawfully bought in another state, where they have been captured and killed at a time and in a manner sanctioned by the laws of that state; and it is their contention that this statute is valid as a police regulation, the purpose of prohibiting the sale within the state of imported game being to prevent evasions of another section of the statute, which prohibits the killing of game within the state, and to make it easier to detect violations of the game laws. It is insisted that the legislature of this state has assumed to make it a misdemeanor for people within this state to have possession of or sell or use articles of food which are wholesome and entirely harmless for the mere purpose of making it easier to enforce the game laws, and that this purpose existing, as supposed, in the legislative mind is potential to validate a statute which but for the particular purpose would be unconstitutional.

This proposition does not appear to me to be sound. In the motive suggested there is no salt to cure the act of unconstitutionality; for if it is legitimate to protect the interests of a few sportsmen, by enacting a law which denies to the many all right to eat imported game, there can be no good reason for denying the power of the state legislature to foster home industry by making laws to prohibit the sale within this state of imported domestic poultry, or beef, or butter. It would certainly be much easier to enforce our local inspection laws, and insure the people against the risk of being defrauded by sale of bad meat or butter, if our markets might be closed to importers of these commodities. But the unconstitutionality of all such local laws in restraint of interstate commerce has been definitely pronounced by the supreme court. Necessity is declared to be the limit of the power of a state in the enactment of laws of this nature. That is to say, mere rules of convenience, which interfere with traffic between states, and which are not necessary as means of self-defense, are void. because they enter within the domain of the power committed by the national constitution to the national government. In the case of Railroad Co. v. Husen, 95 U. S. 465–471, 24 L. Ed. 530, the opinion of the court by Mr. Justice Strong contains the following clear statement of the principle applicable to this case:

"It may also be admitted that the police powers of a state justify the adoption of precautionary measures against social evils. Under it a state may legislate to prevent the spread of crime, or pauperism, or disturbance of the peace. It may exclude from its limits convicts, paupers, idiots, and lunatics. and persons likely to become a public charge, as well as persons afflicted by contagious or infectious diseases,—a right founded, as intimated in Passenger

Cases, 7 How. 283, 12 L. Ed. 702, by Mr. Justice Greer, in the sacred law of self-defense. Vide Neff v. Pennoyer, 3 Sawy. 283, Fed. Cas. No. 10,083. The same principle, it may also be conceded, would justify the exclusion of property dangerous to the property of citizens of the state; for example, animals having contagious or infectious diseases. All these exertions of power are in immediate connection with the protection of persons and property against noxious acts of other persons, or such a use of property as is injurious to the property of others. They are self-defensive. * * * While we unhesitatingly admit that a state may pass sanitary laws, and laws for the protection of life, liberty, health, or property within its borders; while it may prevent persons and animals suffering under contagious or infectious diseases, or convicts, etc., from entering the state; while, for the purpose of self-protection, it may establish quarantine and reasonable inspection laws,—it may not interfere with transportation into or through the state, beyond what is absolutely necessary for its self-protection. It may not, under the cover of exerting its police powers, substantially prohibit or burden either foreign or interstate commerce. Upon this subject the cases in 92 U. S. [Henderson v. Mayor, etc., of New York, 92 U. S. 259, 23 L. Ed. 543; Chy Lung v. Freeman, 92 U. S. 275, 23 L. Ed. 550], to which we have referred, are very instructive. In Henderson v. Mayor the statute of New York was defended as a police regulation to protect the state against the influx of foreign paupers, but it was held to be unconstitutional, because its practical result was to impose a burden upon all passengers from foreign countries. And it was laid down that, 'in whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect.' The reach of the statute was far beyond its professed object, and far into the realm which is within the exclusive jurisdiction of congress. So, in the case of Chy Lung v. Freeman, where the pretense was the exclusion of lewd women, but as the statute was more far-reaching, and affected other immigrants, not of any class which the state could lawfully exclude, we held it unconstitutional."

In their argument counsel for the state have directed my attention to the following authorities, which to some extent support their theory: Ex parte Maier, 103 Cal. 476, 37 Pac. 402; Phelps v. Racey, 60 N. Y. 10; State v. Farrell, 23 Mo. App. 176; State v. Schuman (Or.) 58 Pac. 661; People v. O'Neil (Mich.) 68 N. W. 227, 33 L. R. A. 696; Roth v. State, 51 Ohio St. 209, 37 N. E. 259; Com. v. Savage (Mass.) 29 N. E. 468; Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793. I fully assent to the doctrine of these decisions, holding that it is competent for state legislatures to enact laws for the protection of game, and I do not question the decision of the supreme court of the United States in the case last cited, holding that the legislature of a state has the constitutional power to entirely prohibit the killing of game within the state for the purpose of conveying the same beyond the limits of the state; for it is true, and it is an elementary principle, that the wild game within a state belongs to the people in their collective sovereign capacity. Game is not the subject of private ownership, except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or traffic or commerce in it. But the power of a legislature in this regard only applies to game within the state which is the property of the people of the state, and no such power to interfere with the private affairs of individuals can affect the right of a citizen to sell or dispose of as he pleases game which has become a subject of private ownership by a lawful purchase in another state. This decision of the supreme court does not, directly or indirectly, support the proposition that the legislature of one state has the constitutional power to prohibit traffic in game imported

from another state; and the other cases cited by counsel, which do seem to sustain their contention, are not binding as authorities in this court, and as they do not, in my opinion, rest upon sound principles, I must decline to defer to them.

It is my conclusion that the statute of the state under which the petitioner is being prosecuted, if applicable at all to the facts of his case, is unconstitutional and void, and therefore the petitioner is restrained of his liberty in violation of the constitution of the United States, and it is the duty of this court to set him at liberty. Petitioner discharged.