### DAVIS *vs.* ALLEN and others.

Where a partnership is indebted to an individual for services, and an agent of the firm on adjusting the account gives to the creditor a written acknowledgment that a certain amount is due " on settlement" for the services, signing it with his own name and adding thereto the designation of " agent;" *quere*, whether this is a promissory note, either of the firm or of the agent.

But although the instrument be regarded as a promissory note, it is no discharge of the previous indebtedness of the firm, where it is not shown to have been taken in satisfaction of the debt.

And in such a case a receipt given by the creditor to the agent in full of the demand does not estop him from asserting his claim against the principals. unless they have settled with the agent on the faith of the receipt, and upon the supposition that the agent has actually paid the debt.

A partner whose name is not used in the firm is not, it seems, liable for debts contracted by the firm after his retirement with persons who had no knowledge of his previous connection as a partner, although no notice of his retirement is given.

But he continues liable for debts subsequently contracted with persons who knew of his previous connection, unless he gives them notice of his retirement.

And a jury, it seems, may infer a knowledge of the previous connection, either from direct transactions and dealings of the creditor with the firm, or from public notoriety.

Where a cause is tried by referees, their finding upon the facts of the case is as conclusive as the verdict of a jury.

SUEL DAVIS brought assumpsit in the supreme court against John Allen, Jonathan Child and William Griffith, as partners constituting a firm under the name and style of " The Albany and Buffalo Towing Company."  The declaration was for work and labor, money had and received, &c.  The cause was heard before referees, who reported in favor of the plaintiff.  The supreme court sitting in the eighth district refused to set aside the

report, and rendered judgment thereon in the plaintiff's favor. The defendants appealed to this court. The facts are sufficiently stated in the opinion.

*E. Darwin Smith*, for appellants.

*M. L. Burrill*, for respondent.

JEWETT, Ch. J. The referees found the fact that The Albany and Buffalo Towing Company, on the 26th day of November, 1840, was indebted to the plaintiff in the sum of $125;92, for blacksmithing done by him, for the company, between the first of June and that day. That Levi Darling was the station keeper and agent of the company at Reynale's Basin, where the plaintiff resided, at that time, and had for several years previously. That Griffith, one of the defendants, was superintendent of the company and a member of it, and a few days prior to the 26th day of November, directed Darling to get receipts from all with whom he, as such agent, had dealt, for the purpose of informing him the amount of the accounts against the company, but which he was not then ready to pay in full, and would not be until he returned to Rochester. That pursuant to this direction Darling accounted with the plaintiff and found due to him the abovementioned sum and gave him a written acknowledgment as follows:

Due S. Davis one hundred and twenty-five dollars and ninety-two cents, on settlement for blacksmithing for Albany and Buffalo Towing Company. (Signed) LEVI DARLING, Ag't."

Upon which the plaintiff executed and delivered to said Darling a receipt as follows:

"Received, Royalton, Nov. 26, 1840, from the Albany and Buffalo Towing Company, by the hand of Levi Darling, one hundred and twenty-five dollars and ninety-two cents, in full for blacksmith bill from the first of June up to the 26th of November. $125,92. (Signed) SUEL DAVIS."

That Darling, in a few days after said directions were given, procured receipts from all with whom the company had dealt by

him as its agent, amounting to about $600, and showed them to Griffith on his return to the basin, among which was the one executed by the plaintiff. That Griffith then directed Darling to go to Rochester, settle his accounts, deliver his receipts and receive the money : which he did soon after, and delivered to Griffith this receipt with others, and received from him the amount of all the receipts so procured, by him, but did not pay the plaintiff the amount so found due to him. That Darling had previously given notes for the company for amounts found due to individuals from the company, which the company had paid. Griffith, personally, had settled one such note, and knew that other notes had been so given, and furnished money to pay them.

It is first made a point in behalf of the defendants, that the paper signed by Darling as agent, certifying the amount found due the plaintiff from the company, for blacksmithing, was *his* promissory note, and not that of the company, and that therefore the plaintiff cannot recover against the members of the company upon it. I am inclined to think, from the facts found, that it was not intended, by the plaintiff or Darling, to be made as the promissory note of either, the company, or their agent Darling. In form it is but a mere acknowledgment or certificate that a settlement with the plaintiff for blacksmithing which he had done for the Albany and Buffalo Towing Company, had been made by Darling, acting as agent for the company, and that the sum mentioned was found due to him. But if this instrument is to be deemed the promissory note of Darling, or of the Towing Company, it makes no ground to bar the plaintiff of his action to recover the balance due to him, on his account, unless it has been paid ; and it is found that it has not been. (*Porter* v. *Tallcot*, 1 *Cowen*, 359 ; *Muldon* v. *Whitlock, id.* 290 ; *Tobey* v. *Barber*, 5 *John.* 68 ; *Schermerhorn* v. *Loines*, 7 *id.* 311 ; *Johnson* v. *Weed*, 9 *id.* 310.)

It is next contended that the plaintiff, having given a receipt in full to Darling upon which he settled with his principals, is estopped from setting up any claim against them. If the fact had been found, that Darling's principals had come to a settle-

ment with him, upon the faith of that receipt and upon the supposition that the plaintiff's demand had been *satisfied* by Darling as indicated by it, and had paid him the money, the point could not have been successfully met. But the referees found the fact that the plaintiff's account against the company had been adjusted and receipt given, without payment, in pursuance of the directions of Griffith—he knowing that, notwithstanding the receipt, the plaintiff's demand was unpaid—and for the purpose of paying it, Griffith furnished Darling, the agent of the company at the time the receipt was delivered to him, the money to pay this demand, as well as others who had given receipts under like circumstances. If, therefore, Darling proved unfaithful and misapplied the money thus provided, the loss, if any, should fall upon his principals, and not upon the creditors of the company. ( *Wyatt* v. *The Marquis of Hertford*, 3 *East*, 147; *Cheever* v. *Smith*, 15 *John.* 276.)

It is next objected that the plaintiff can not recover in this suit against the three defendants, on the ground that it is found that the demand accrued against the company subsequent to the time when Child, one of the defendants, had ceased to be a member of the company; and that as his name never appeared in the name under which the company did business, no notice of his having retired from the firm was necessary. It was incumbent on the plaintiff in this action to prove a joint promise made by the defendants to himself. If the defendants had been found to be all partners, at the time the work was done for the company, using the name of "The Albany and Buffalo Towing Company," to transact their partnership business, that promise is established. But the referees found the fact that they had ceased to be so, Child having previously withdrawn from the firm. It was also found, that from the year 1832 till some time in the year 1840, the defendants were partners and transacted their business under the name of "The Albany and Buffalo Towing Company," and that the plaintiff had worked for that company, as a blacksmith, from the fall of 1833 to the fall of 1843; and that no notice that Child had ceased to be a member of the company had been given to the public or to the plain

tiff. Then it is said that although Child was not in fact a partner at the time the plaintiff's demand accrued, he had by his conduct represented himself as one, and induced the plaintiff to give him credit as such, and is therefore liable to him.

The general principle is, that where a person has done business with another, as a member of a firm, or has so publicly appeared as a partner as to satisfy a jury that the plaintiff must have believed him to be such, and he suffers the plaintiff to continue in, and act upon that belief, by omitting to give notice of his having ceased to be a partner, after he really had ceased, he will be responsible for the consequences of his original representation, uncontradicted by a subsequent notice. An omission to give such person notice, under such circumstances, of his retirement, is held to be equivalent to a continual representation, that he still remains a member of the firm. But in order to render him liable on this ground, it is necessary that he should have been known as a member of the firm to the plaintiff, either by direct transactions or public notoriety. (*Story on Partnership*, p. 247, § 160; *Carter* v. *Whalley*, 1 *Barn: & Adol.* 11.)

The referees have not stated what conclusions of fact they drew from the evidence in reference to this point, except that Child omitted to give notice of his retirement from the firm. They do not state that they came to the conclusion that Child ever dealt with the plaintiff in the character of a partner of the company, or that he was ever known to the plaintiff as a member of the company, either by direct transactions or public notoriety. They have stated a fact from which a jury might perhaps infer that the plaintiff knew who composed the company during the seven years immediately subsequent to the year 1832, by direct transactions, namely, that the plaintiff did their blacksmithing during that period, at Reynale's basin. But in reference to Child's having been known as a member of the company during that time to the plaintiff, by public notoriety, instead of stating the conclusion of fact which the referees drew from the evidence before them, they have merely stated what the evidence of the fact was. That may have satisfied

them that Child was known to the plaintiff, in one mode or the other, as a member of the company. Their report necessarily involves a finding that Child was thus known to the plaintiff.

But if the members of this court should think that the ref· erees had come to a wrong conclusion, upon a mere matter of fact, this court has no jurisdiction to reverse the judgment of the supreme court for that reason, in a case like this. In cases of this kind the referees are, as to matters of fact, merely a sub-stitute for a jury, whose decision upon questions of fact can not be reversed upon a writ of error; although the court in which the original action is pending may set aside the report as against the weight of evidence, or grant a new trial upon newly discov-ered facts, as justice may seem to require. (*Feeter* v. *Heath,* 11 *Wend.* 478; *Mersereau* v. *Lewis,* 25 *id.* 243.) The judg-ment must therefore be affirmed.

Judgment affirmed.