Exceptions overruled, judgment ordered for defendants, with costs.

---

Simon Rothschild, Appellant, *v.* The Rio Grande Western Railway Company, Respondent.

*Ambiguous phrases in contracts construed against the covenantor — bonds issued by a corporation and the trust deed given to secure them — the provisions of the former control.*

In the construction of contracts ambiguous phrases are to be taken most strongly against the covenantor whose words they are.

The bonds issued by a corporation, and the trust deed or mortgage given by it to secure the same, are to be construed together; but in case there is any ambiguity in any of the provisions of the mortgage, such ambiguity must be construed against the corporation.

In case the bonds and trust deed contain wholly inconsistent provisions, those contained in the bonds must prevail over those contained in the deed. The provisions of the bonds meet the eye of the purchaser, and are designed by the corporation to influence their sale, and they cannot be nullified by an inconsistent provision contained in the trust deed.

If the bonds contain an absolute promise to pay definite sums on specific dates, a right of action, in case of failure to pay, is implied, and a provision of the trust deed given to secure such bonds restricting such right is utterly inconsistent with the provisions of the bonds, which in such case must prevail.

Appeal by the plaintiff, Simon Rothschild, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 12th day of May, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit.

This action was brought February 14, 1890, to recover a judgment, for money only, on 110 coupons, each for the payment of thirty dollars, the semi-annual interest due on the first day of Septem-

84   103
17ap635
84   103
33ap628
84h  103
a164a594
a164a595
84h     103
169 NY³149

ber and on the first day of March in each year, from September 1, 1884, to September 1, 1889, inclusive, cut from ten bonds of $1,000 each, issued by the Denver, Rio Grande and Western Railway Company. This corporation was organized under the laws of the Territory of Utah, and authorized to construct and operate a railroad in that Territory.

August 1, 1881, the corporation executed and recorded a mortgage to secure certain bonds to be thereafter issued at the rate of not exceeding $16,000 per mile. Among other provisions the mortgage contains the following :

### " ARTICLE VIII.

" It is further distinctly stipulated, mutually covenanted and agreed (any law or usage to the contrary notwithstanding), that neither the trustee nor his successor, or successors in the trust, nor the holder or holders of any bond or bonds hereby secured, shall pursue any remedy at law or in equity for obtaining possession of or procuring a sale of the trust property hereby transferred and conveyed, or intended so to be, or any part thereof, otherwise than in the manner herein provided for enforcing his or their rights and demands, or recovering the whole or any portion of the principal or interest of the said bonds, it being the intention, stipulation, covenant and agreement of the parties hereto, with each other, and the bondholders secured hereby, for the better protection of the holders of the bonds hereby secured, collectively, and for the securing of the largest possible benefits and proceeds from the trust property or any portion thereof, that the modes and remedies of entry, or of sale, or both, hereinbefore provided, shall be exclusive of all others.

" It shall, however, be the duty of the trustee to exercise the power of entry hereby granted and conferred, or the power of sale hereby granted and conferred, and delegated, or both, whenever, after default as aforesaid, the trustee might or could, at his discretion, exercise such powers, or either, respectively, and the holder or holders of bonds secured hereby, to the amounts as hereinafter specified, as applicable to the several cases of default with reference to such powers respectively, shall in writing require, and at the same time properly indemnify the trustee in such manner and form as he may reasonably require, against all costs, expenses and other liabili-

ties which may or shall be by him incurred in the premises, subject, however, to the qualifications hereinafter contained:

" *First.* If the default be as to payment of the principal of any bonds secured hereby, or of any interest thereon, the trustee shall exercise the power of entry on such requisition therefor and indemnification by the holder or holders of not less than twenty-five per cent of the total amount of such bonds, in respect whereof such a default was or defaults were made.

" *Second.* If the default be as to any other act or thing, by these presents required to be done and performed by the company, the trustee shall exercise the power of entry on such requisition therefor, and indemnification by the holder or holders of at least twenty per cent of the amount of such bonds outstanding at the time; and

" *Third.* If the default be as to the payment of the principal of said bonds, or any of them, the trustee shall exercise the power of sale on such requisition therefor, and indemnification by the holder or holders of at least twenty per cent of the amount of such bonds due at the time thereof.

" No bondholder or bondholders, except the bondholder or the bondholders who shall have made such requisition and given such indemnification, shall be entitled to make any complaint or institute any proceedings against the trustee in or before any court, tribunal or authority whatsoever and wheresoever, in respect of any delay, neglect, omission or refusal of the trustee to exercise the powers of entry or of sale, or both, hereby conferred, or in relation to his acts and dealings in the premises."

Pursuant to this mortgage the corporation issued a large number of bonds, dated September 1, 1881, of which the following is a copy, except that each bond bears a different number.

" $1,000.

UNITED STATES OF AMERICA,

Utah Territory.

THE DENVER AND RIO GRANDE WESTERN

RAILWAY COMPANY,

First mortgage, six per cent.

GOLD BOND.

Thirty years after date The Denver and Rio Grande Western Railway Company will pay to the registered owner hereof, or, if not

registered, to bearer, one thousand dollars. Interest on said sum at 6% per annum will be paid half yearly, March first and September first, to the bearer of the annexed coupon therefor on surrender thereof. Principal and interest payable in United States gold coin at the company's agency in New York city. This bond is entitled to the benefits and subject to the provisions of the trust deed, dated the first day of August, 1881, made by the company to Louis II. Meyer, trustee of the railroad and other property, rights and franchises therein described, to secure this and other bonds of the company to be issued thereunder as therein set forth, to an extent not exceeding $16,000 average per mile, which trust deed also provides in the several cases of default as therein specifically stated, for the right in the trustee to exercise the power of entry thereby conferred, the right to declare the principal due, to sell in case of non-payment of such principal, subject to the qualifications therein contained, to which trust deed reference is hereby made. This bond shall not become obligatory until the certificate indorsed hereon, authenticating the same as issued under said trust deed, is signed by the trustee.

"In witness whereof, the said company has caused its corporate seal to be hereunto affixed, attested by the signatures of its [L. S.] president and secretary, and has likewise caused a *fac simile* of the signature of its treasurer to be attached to each of the coupons annexed, this first day of September, 1881.

"THE DENVER AND RIO GRANDE WESTERN RAILWAY COMPANY,

"By ———,

" *President.*

" Attest : ———,

" *Secretary.*

The said bond is indorsed as follows :

"(TRUSTEE'S CERTIFICATE.)

" I hereby certify that this is one of the bonds issued in conformity with and under the provisions of the trust deed mentioned within. L. H. MEYER,

" *Trustee.*

" (REGISTRATION.)

" This bond may be registered in the owner's name on the company's books in New York city, such registry being noted on the bond by the company's transfer agent, after which no transfer shall be valid unless made on the company's books by the registered owner and similarly noted on the bond, but the same may be discharged from registry by being transferred to bearer, after which it shall be transferable by delivery, but it may be again registered as before. The registry of the bond shall not restrain the negotiability of the coupons by delivery merely."

Annexed to each bond were sixty coupons for the payment of the half yearly interest, of which the following is a copy, except number and date of payment:

" Will pay to bearer on the first day of ———— thirty dollars in U. S. gold coin on surrender of this coupon at its agency in New York city, $30, being 6 months' interest on its first mortgage, 6 %.

" Gold Bond No. ——.                                    ————,
                                                  " *Treasurer.*"

The State Line and Denver Railway Company was incorporated under the laws of the State of Colorado and authorized to construct and operate a railroad in that State.

On June 24, 1889, the Denver and Rio Grande Western Railway Company and the State Line and Denver Railway Company were, pursuant to the statutes of said State and Territory, consolidated into one corporation under the name of the Rio Grande Western Railway Company, which corporation assumed all the debts and liabilities of the constituent corporations to the same extent as though said debts and liabilities had been incurred by it. This assumption was pursuant to the statutes of the State and Territory under which the consolidation was affected. At the date of the consolidation the Denver, Rio Grande and Western Railway Company had made default in the payment of the coupons Nos. 6 to 15 inclusive annexed to its bonds, which fell due September 1, 1884, March 1, 1885, September 1, 1885, March 1, 1886, September 1, 1886, March 1, 1887, September 1, 1887, March 1, 1888, and September 1, 1888, and March 1, 1889. And said corporation and this defendant made default in the payment of coupon No. 16,

which fell due September 1, 1889, after the consolidation. Payment of these coupons was duly demanded of the defendant, which it refused to make, and thereafter this action was begun.

*George Hoadly* and *William Strauss*, for the appellant.

*Theodore F. H. Meyer*, for the respondent.

Follett, J. :

The sole defense interposed to this action is that, under article 8 of the deed of trust above quoted, the owner of coupons cannot maintain an action at law to recover the amount due on them.

The bond contains an unconditional covenant to pay $1,000 thirty years after its date, and the bond and coupons an unconditional promise to pay the interest on the bond semi-annually on the first day of March and the first day of September in each year, at the rate of six per cent per annum, and there is no hint in the bond or in the coupon that the owner may not, in case of default, maintain an action at law for the recovery of the principal or interest as it falls due. It is recited in the bond :

"This bond is entitled to the benefits, and subject to the provisions of the trust deed dated the 1st day of August, 1881, made by the company to Louis H. Meyer, trustee of the railroad and other property, rights and franchises therein described, to secure this and other bonds of the company, to be issued thereunder as therein set forth, to an extent not exceeding $16,000 average per mile, which trust deed also provides, in the several cases of default as therein specifically stated, for the right in the trustee to exercise the power of entry thereby conferred, the right to declare the principal due, to sell in case of non-payment of such principal, subject to the qualifications therein contained, to which trust deed reference is hereby made."

The language, "which trust deed also provides, in the several cases of default as therein specifically stated, *for the right in the trustee* to exercise the power of entry thereby conferred, the right to declare the principal due, to sell in case of non-payment of such principal, subject to the qualifications therein contained, to which trust deed reference is hereby made," is not calculated to inform the purchaser of a bond that he cannot sue at law for defaulted interest,

but informs him that in case of default the trustee may enter into possession and sell the mortgaged property, as provided in the mortgage. This paragraph clearly indicates that the rights and powers of the trustee to enforce the trust deed are expressed therein and are to be pursued as therein provided, but there is no intimation that the right of the bondholder to sue for the money which becomes due is denied or cut off by the trust deed.

Undoubtedly the bond and trust deed are to be construed together, but in case there is any ambiguity in any of the provisions of the mortgage, such ambiguity must be construed against the corporation. It is an elementary rule for the construction of contracts that ambiguous phrases are to be taken most strongly against the covenantor, whose words they are. This rule is universally applied to contracts of insurance, and to instruments which are wholly devised by or in behalf of the covenantor, and it should be rigorously applied to the construction of trust deeds or mortgages which purport to be designed for securing the payment of the bonds of the obligor. It is true that these deeds are matters of record, but the records are often in a State distant from the place at which the bonds are sold, and the purchaser seldom has an opportunity of examining the terms of the instrument. Article 8 was evidently designed to prescribe the conditions, authorizing the trustee or bondholder to enforce the trust deed and the manner in which it might be enforced for the purpose of collecting out of the mortgaged property the sum due and unpaid on the bonds, and, reading the whole article together, it is not fairly capable of any other construction.

As contended by the learned counsel for the appellant, the words "any remedy at law or in equity for obtaining possession of, or procuring a sale of the trust property hereby transferred," qualify and govern all the other words of the first paragraph of the eighth article.

The contention of the defendant would, in effect, exempt all of the property of the corporation not covered by the mortgage from liability to be taken in satisfaction of its bonded debt. It is not so stipulated in the trust deed, nor in the bonds, nor in the coupons.

But, on broader grounds, we think the contention of the defendant ought not to prevail. As before stated, we concede that the bonds and trust deed are to be construed together as forming the

contract, in case they can be harmonized; but in case the bonds and deed contain wholly inconsistent provisions, those contained in the bonds must prevail over those contained in the deed. The provisions of the bonds meet the eye of the purchaser and are designed by the corporation to influence their sale, and they cannot be nullified by an inconsistent provision contained in the trust deed. As before stated, these bonds and coupons contain an absolute promise to pay definite sums on specific dates, which implies a right of action in case of failure, and if the eighth article is capable of the construction contended for by the corporation it is utterly inconsistent with the bonds, which in that case must prevail.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

Van Brunt, P. J., and Parker, J., concurred.

Judgment reversed, new trial ordered, with costs to appellant to abide event.