IMPERIAL SHALE BRICK COMPANY, Appellant, *v.* EDGAR B. JEWETT et al., Respondents.

1. INSURANCE — CONSTRUCTION OF POLICY. Of two admissible constructions of an insurance contract the one against the insurers should be preferred, since they dictate its form and are the authors of its ambiguity.

2. UNINCORPORATED ASSOCIATION — LIABILITY OF INDIVIDUAL UNDERWRITERS. The members of an unincorporated association of underwriters are liable as joint insurers, under a certificate of insurance issued by their agents under and subject to the conditions of a certain open policy the contents of which were unknown to the insured, but which the certificate stated was issued by such association, although such policy was in fact made by the members of such association in their separate individual capacity, and under its terms each underwriter assumed only "his proportionate part of the aggregate amount payable to the insured" in the event of a loss.

3. WHEN INDIVIDUAL UNDERWRITER NOT LIABLE AFTER RESIGNATION. An underwriter whose resignation from an unincorporated association of underwriters has taken effect, and who has revoked his power of attorney to the general manager of such association, is not bound by a contract of insurance subsequently made by such general manager, where the insured did not know that such underwriter had ever been a member of the association and did not suppose he was dealing with him as such, although such underwriter gave no public notice of his resignation and did not take up the revoked power of attorney.

4. EQUITABLE ISSUE. An equitable issue is raised by a denial interposed to a complaint which seeks to reform a certificate of marine insurance by substituting Waukegan, Ill., as the port of destination, for Waukegan, Mich., which had been inserted by mistake, and to recover on the contract as reformed, and renders the action properly triable at an Equity Term of the Supreme Court, instead of before a jury.

*Imperial Shale Brick Co.* v. *Jewett*, 42 App. Div. 588, reversed.

(Argued November 18, 1901; decided December 20, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 28, 1899, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Roger M. Lee* for appellant. The defendants were so associated and transacted their insurance business in such manner that by the common law they were as toward third persons jointly liable, substantially as partners. (1 Lindley on Part. [4th ed.] 376, 377; 3 Kent's Comm. [13th ed.] 27; *Hess* v. *Werts*, 4 S. & R. 356; *Beaver* v. *McGrath*, 50 Penn. St. 479; *Davidson* v. *Holden*, 55 Conn. 103; *Hodson* v. *Baldwin*, 65 Ill. 532; *Frost* v. *Walker*, 60 Me. 468; *Cutler* v. *Estate*, 25 Vt. 73; *Wells* v. *Gates*, 18 Barb. 554; *Park* v. *Spaulding*, 17 N. Y. Super. Ct. 128; *Whitman* v. *Porter*, 107 Mass. 522; *M. Nat. Bank* v. *Dean*, 124 Mass. 81.) In order to avoid the common-law joint liability, the members of such an unincorporated association must plainly and unequivocally notify and advise the person with whom they deal of the exact terms of the attempted limitation or restriction thereon, and such person must then knowingly assent thereto. The mere reference in the certificate to the terms of Open Policy No. 4007 was not sufficient to accomplish such limitation. (1 Lindley on Part. 376, 377; *Davidson* v. *Holden*, 55 Conn. 103; *Hallett* v. *Dowdell*, L. R. [18 Q. B.] 1; *Sullivan* v. *Campbell*, 2 Hall, 271; *Beavers* v. *McGrath*, 50 Penn. St. 479; *Hollister* v. *Nowlen*, 19 Wend. 234; *Edsall* v. *C. & A. R. R. & T. Co.*, 50 N. Y. 661; *Blair* v. *E. R. Co.*, 66 N. Y. 313; *Herrman* v. *M. Ins. Co.*, 81 N. Y. 184; *Hoffman* v. *F. Ins. Co.*, 32 N. Y. 405; *Nicholas* v. *N. Y. C. & H. R. R. R. Co.*, 89 N.Y. 370.) The representation in the certificate that it was issued by a " company " equitably estops the defendants from now claiming that they contracted with the plaintiff merely as individual principals acting through a common agent. (*Trustees Town of Brookhaven* v. *Smith*, 118 N. Y. 634; *Blair* v. *Wait*, 69 N. Y. 113; *Voorhis* v. *Olmstead*, 66 N. Y. 113; *Kelly* v. *Scott*, 49 N. Y. 595.) The defendants were transacting their business of insuring cargoes contrary to the statute law of New York, in that they did this business under an assumed fictitious name rather than under the names of the individual members of their association. (*Maher* v. *H. Ins. Co.*, 67 N. Y. 283; *Wood* v. *A. F. Ins. Co.*, 149 N. Y. 382; *Ins. Co.* v.

*Leslie,* 47 Ohio St. 414; *Thwing* v. *G. W. Ins. Co.*, 11 Mass. 93; *Nat. U. Ins. Co.* v. *Marlow,* 74 Fed. Rep. 775; *N. Y. L. Ins. Co.* v. *Russell,* 77 Fed. Rep. 94; *C. L. Ins. Co.* v. *Chamberlain,* 132 U. S. 304; *C. O. Ins. Co.* v. *L. E., etc., Co.,* 13 Ohio C. C. 661; *St. P. F. & M. Ins. Co.* v. *Shaver,* 76 Iowa, 272.)

*George Clinton, Arthur W. Hickman* and *Martin Clark* for respondents.   This appeal being from an order and judgment of the Appellate Division reversing a judgment entered upon a decision of the case by the court without a jury, without stating that the reversal was upon the facts, it must be presumed that the judgment was not reversed upon a question of fact but upon the law. (*Schwinger* v. *Raymond,* 83 N. Y. 192; *Bonnell* v. *Griswold,* 89 N. Y. 122; *Israel* v. *Manhattan Ry. Co.,* 158 N. Y. 624; *Parsons* v. *Parker,* 159 N. Y. 16; *Pratt* v. *Foote,* 9 N. Y. 463; *Shotwell* v. *Dixon,* 163 N. Y. 43; *Kenyon* v. *K. T. & M. M. A. Assn.,* 122 N. Y. 247; *A. F. Ins. Co.* v. *Austin,* 69 N. Y. 470; *Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 342; *N. H. Co.* v. *Bement & Sons,* 163 N. Y. 505.)   The conclusions of law are not supported by the facts found. (*Murdock* v. *C. Co. Mut. Ins. Co.,* 2 N. Y. 210; *Allen* v. *G. A. Ins. Co.,* 123 N. Y. 6; *M. M. L. Ins. Co.* v. *Buffin,* 115 Mass. 343; *Ellis* v. *A. C. F. Ins. Co.,* 50 N. Y. 402; *Ruggles* v. *A. C. Ins. Co.,* 114 N. Y. 415; *Hicks* v. *B. A. Assur. Co.,* 162 N. Y. 284; Richards on Ins. § 42; *De Grove* v. *M. Ins. Co.,* 61 N. Y. 594; *Lipman* v. *N. F. Ins. Co.,* 121 N. Y. 454.)   There was no violation of the statutes of this state by the defendants for which they should be held jointly liable to the plaintiff. (*Marshall* v. *R. F. Ins. Co.,* 78 Hun, 83; *W. T. & C. Co.* v. *Kelderhouse,* 87 N. Y. 430; *Lorillard* v. *Clyde,* 86 N. Y. 384; *Ormes* v. *Dauchy,* 82 N. Y. 443.)   The exceptions taken upon the trial justify the reversal of the judgment entered against the defendants. (*King* v. *Van Vleck,* 109 N. Y. 363; *Glenn* v. *Lancaster,* 109 N. Y. 641; *De Remer* v. *Brown,* 165 N. Y. 410; *Brady* v. *Cassidy,* 104 N. Y. 148;

10

*Pindar* v. *R. F. Ins. Co.*, 47 N. Y. 114; *Ins. Co.* v. *Mowry,* 96 U. S. 544; *M. M. Ins. Co.* v. *Lyman,* 15 Wall. 664; *Penny* v. *Gillett,* 7 Wkly. Dig. 101.)

LANDON, J. The plaintiff brought this action to reform a contract of insurance and, as reformed, to recover against the nineteen defendants as joint insurers of a cargo of pressed bricks shipped by plaintiff at Cleveland, Ohio, about October 2, 1895, to Waukegan, Illinois. The cargo became a total loss and did not reach its destination.

The contract is in these words:

"No. 363.                               $2,000.00.

      "INLAND MARINE CERTIFICATE OF INSURANCE.

              "BUFFALO, N. Y. *Oct. 5th,* 1895.

"This is to certify that The Imperial Shale Brick Company insured under and subject to the conditions of Open Policy No. 4007, issued by the Buffalo Fire and Marine Underwriters of Buffalo, N. Y., at the Buffalo, N. Y., agency, in the sum of two thousand dollars, on paving brick. In board cargo of Schooner John Magee, at and from Cleveland, Ohio, to Waukegan, Mich. Loss, if any, payable to order of assured thereon and return of this certificate. Valid when countersigned by the authorized agent of this company, at Buffalo, N. Y.

    "Countersigned by:

                       "HIRAM H. SMITH,
                               "*Agent.*
                     "HENRY S. McFALL,
                               "*Attorney.*"

This contract was delivered to the plaintiff at Cleveland, Ohio, by the defendants' agent there. The open policy No. 4007, referred to in the certificate, was then in the defendants' office in the city of Buffalo, one hundred and eighty miles from Cleveland. It had not been seen by the plaintiff, and its contents were unknown to it. No representation was made to

the plaintiff. After the loss occurred for which the plaintiff now seeks to recover, it discovered that the open policy was not made by the company whose name appeared in the certificate, but by the nineteen defendants, in their separate individual capacity, and that the liability of each defendant therein expressed was "his proportionate part of the aggregate amount payable to the insured upon such loss, and no one of the underwriters shall be, in any event, liable under this policy * * * for any other underwriter's liability hereon, the liability assumed hereby by each underwriter being separate and individual only, as if each underwriter had issued to the assured herein a separate policy; their liability being several and not joint." The defendants, except Hickman, whose relation to the case will appear later, had issued this open policy to the same Hiram H. Smith whose name as agent is signed to the certificate above set forth, for the purpose of enabling him to insure cargoes by certificate, under one phase of Lloyds insurance, so called. Smith did not have or contemplate having any cargoes of his own to insure. He was the agent of the defendants, except Hickman, employed in their home office in Buffalo by Henry S. McFall, whose name is signed to said certificate as attorney, and who was the general manager for all the defendants, and attorney in fact of each defendant, to sign such certificates except Hickman. (This exception will be understood hereafter without its repetition.) The course of defendants' business was never to deliver a policy to the assured, but only such a certificate referring to such an open policy in the custody of some one of their agents. Thus the certificate delivered in Cleveland could refer to an open policy in Buffalo, and a certificate delivered in Buffalo to another open policy, however distant it might be from the assured.

No one of the defendants ever paid in any money to the association, and it had no assets except such as it may have derived from premiums. With the certificate delivered and the open policy thus withheld, the plaintiff was led by the defendants to understand that he was dealing with a known

corporation or company of the name and residence mentioned in the certificate, instead of with nineteen persons whose names, residences and solvency were unknown. If the plaintiff knew the law, he knew that section 54 of the Insurance Law of the state of New York forbade any person to engage in insurance under a corporate or fictitious name, or any name except its own, or the names of the persons comprising the partnership or association so insuring, unless as agents of a person or corporation duly qualified according to law; and thus this certificate would mislead the plaintiff. We must read the certificate and open policy together in the light of the rule, peculiarly applicable to insurance policies, that of two admissible constructions the one against the insurers should be preferred, since alone they dictated its form and are thus the authors of its ambiguity. (*Herrman* v. *Merchants' Insurance Co.*, 81 N. Y. 184; *Hoffman* v. *Ætna F. Ins. Co.*, 32 N. Y. 405.) This contract of insurance was made by the certificate; the plaintiff was thereby told by the certificate itself who its insurers were, namely, a " company " styled the " Buffalo Fire and Marine Underwriters of Buffalo, N. Y.," and thus it was told that whoever the insurers were, they constituted a company of that name and dealt with it as such. The plaintiff had the right to rely upon that representation. It had notice by the reference in the certificate to look to the open policy for the terms and conditions of the insurance it bought, but not a notice substituting nineteen individual several underwriters for the company. The fact, moreover, was that in their agreement with each other the defendants had described themselves as an association, and they had empowered their general manager and attorney in fact (McFall) " to do and perform for us and in our stead and in the name of our said association (meaning the Buffalo Fire and Marine Underwriters) every and any other act or things in relation to any policy or contract of insurance accepted by him by virtue of this power."

The reference to the open policy is to ascertain the quality of the insurance which the company named in the certificate

sold as a single underwriter, or as joint underwriters to the plaintiff, that is to say, the plaintiff's cargo is insured against the perils in the open policy expressed, and under the terms and conditions therein expressed, to be observed by the plaintiff. The certificate in no way refers to the policy as a contract with the underwriters in a different capacity from that stated in the certificate, and if it can possibly admit of that construction, it also admits of the other, and under the rule stated the plaintiff is entitled to the construction most favorable to itself.

The defendants contend that the certificate is no more than an agreement by the company, if company the defendants were, that it has insured the plaintiff under the open policy, that is, under the separate nineteen contracts therein contained, and, therefore, the plaintiff's sole recourse is to the nineteen contracts. We reject this contention, because it would give to the authors of this certificate the benefit of a subtlety in phrase and methods apparently contrived to mislead the plaintiff and deprive it of the sort of insurance the defendants led it to understand they sold it by the contract they delivered to it.

Construing the words " under and subject to the conditions of open policy No. 4007 issued by the Buffalo Fire and Marine Underwriters of Buffalo, N. Y.," favorably to the plaintiff, the words do not say or mean under the open policy, but under its terms and conditions. The open policy was made by nineteen underwriters instead of all of them as a company; thus we know that this company, as a single underwriter, is bound by the same terms and conditions as is each single underwriter in the open policy, provided he " had issued to the assured herein a separate policy " for the separate amount of his contract; that is, the company binds itself to the amount it assumes, the same as the individual underwriter binds himself for the amount he assumes. The company, by the certificate, thus assumed all the loss as a single underwriter. If the terms of the policy were inconsistent with those of the certificate, those of the certificate would prevail. (*Rothschild*

v. *Rio Grande W. Ry. Co.*, 84 Hun, 103; affd., 164 N. Y. 594.)

This company or association was not incorporated, was in nowise exempted by law from partnership liability, except as it should in its agreement with the insured actually and explicitly so exempt itself. (*Wells* v. *Gates*, 18 Barb. 554; *National Bank of Watertown* v. *Landon*, 45 N. Y. 410.) This does not mean that seemingly constructive notice which is so contrived and intended as to be hidden in the letter, and not to be perceived or suggested until searched out of its lurking place after a loss.     It means a notice so plain and fair that the party to be charged with it either receives it or it is his own fault if he does not.     Chancellor KENT states the rule as follows : " The members of a private association may limit their personal responsibility, if there be an explicit stipulation to that effect made with the party with whom they contract, and *clearly understood by him* at the time.     But stipulations of that kind are looked upon unfavorably as being contrary to the general policy of the law ; and it would require a direct, previous notice of the intended limitation to the party dealing with the company, and his *clear understanding* of the terms of the limitation."     (3 Kent's Com. p. 27; 1 Lindley on Partnership, 376, 377; *Davison* v. *Holden*, 55 Conn. 103, 112 ; *Beaver* v. *McGrath*, 50 Pa. St. 479.)

The " binding slip " cases, such as *De Grove* v. *Met. Ins. Co.* (61 N. Y. 594) and *Lipman* v. *Niagara F. Ins. Co.* (121 N. Y. 454) do not apply.     In them it was held that the binding slip, in connection with the evidence, entitled the applicant for insurance to a policy of the company in whose behalf the slip was issued, and that the terms of the actual contract were to be found in the usual policy which the company actually by the slip and its contract agreed to issue.     Such was the policy the parties had in mind.

The defendant Hickman, however, is not liable, under the findings.     It is found that the association commenced business in 1895, and conducted it during that season of navigation. The findings show that Hickman revoked his power of attor-

ney to McFall, the general manager, April 24, 1895, and at the same date resigned from the association. This resignation, pursuant to a provision in the articles of association, took effect thirty days later, or May 24th. The open policy was signed in his name by McFall June 19, 1895, and the certificate was issued October 5, 1895. Hickman never attended any meetings of the association. He gave no public notice of his resignation. He did not take back from McFall the power of attorney. The plaintiff did not know that he had ever been a member of the association, did not suppose it was dealing with him as such. The findings do not admit of the inference that Hickman in any way misled the plaintiff. McFall, after the revocation of the power of attorney, had no power to represent that Hickman was a member. He was not really, or by any omission of his own, ostensibly a member of the association. He had the right to assume that McFall would not act upon a revoked power of attorney, and he is not chargeable with negligence in not taking up the instrument itself, even if he had the right to do so, since he could rely upon the presumption that McFall would not use it as an instrument of fraud. It was not like a negotiable instrument in the hands of the payee, valid on its face, but invalid in fact, and capable of becoming valid by estoppel if transferred for value to an innocent purchaser; because no act of McFall could give it life. Thus Hickman was in no way a party to the contract of insurance. (*Davis* v. *Allen,* 3 N. Y. 168; *Howell* v. *Adams,* 68 N. Y. 314; *Elmira I. & S. R. M. Co.* v. *Harris,* 124 N. Y. 280.)

The defendants complain that against their objection and exception the action was tried at the Equity Term instead of before a jury. The plaintiff applied for insurance upon its cargo in transit by lake from Cleveland, Ohio, to Waukegan, Illinois. By mistake Waukegan, Michigan, was written in the certificate and not observed by the plaintiff until after the loss. There is no such port as Waukegan, Michigan. The plaintiff properly asked in its complaint to have the certificate corrected in this respect. If the defendants had admitted by

their answer the statement of facts alleged in this behalf in the complaint, as they did upon the trial, the equitable issue would not have arisen, but they did not, but interposed a denial, and thus the case properly came on for trial at the Equity Term.

The complaint does not contain separate equitable and legal causes of action, but it asks such relief in equity as would, if granted, permit a recovery, as at common law. But the complaint stated no common-law cause of action, except as conditioned upon the equitable relief, and hence the right to recovery rested primarily upon equitable grounds. The court having obtained jurisdiction in equity, may, if it grant the equitable relief, retain jurisdiction and render that further judgment which properly follows thereupon. *Wheelock* v. *Lee* (74 N. Y. 496), cited by defendants, was precisely the reverse. In that case there were four causes of action at law for the recovery of money. Conditioned upon such recovery was the demand that certain securities be surrendered. Of course, in such a case, success in the actions at law is a condition precedent to any equitable relief, and the joinder of the former with the latter ought not to deprive the defendant of a jury trial of the former.

We have examined the other errors assigned by the defendants, but do not think any of them justify the reversal of the judgment of the Trial Term except as to the defendant Hickman.

The order of the Appellate Division should be reversed, with costs, and judgment of trial court affirmed, with costs, except as to the defendant Hickman, and as to him, order affirmed and judgment absolute ordered in his favor on the stipulation, with costs.

Pᴀʀᴋᴇʀ, Ch. J., O'Bʀɪᴇɴ, Bᴀʀᴛʟᴇᴛᴛ, Mᴀʀᴛɪɴ, Vᴀɴɴ and Cᴜʟʟᴇɴ, JJ., concur.

Judgment accordingly.