## BOBE v. LLOYDS et al. *

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

No. 135.

1. **Insurance** ⟨⟩**626—Complaint held sufficient to authorize service on president or treasurer as officer of unincorporated association (General Associations Law [Consol. Laws N. Y. c. 29] § 13).**

Complaint alleging that corporation acted as treasurer of insurance underwriting syndicates, and as trustee for policy holders of fund to be administered by it against losses on policies, *held* sufficiently to describe each syndicate as association, within General Associations Law N. Y. § 13, to authorize service on such associations by service on their president or treasurer.

2. **Insurance** ⟨⟩**626—Services of process on corporation acting as treasurer for insurance underwriting syndicates held to give court jurisdiction (General Associations Law [Consol. Laws N. Y. c. 29] § 13; Civil Practice Act N. Y. § 229).**

Under General Associations Law N. Y. § 13, and Civil Practice Act N. Y. § 229, service of process on corporation acting as treasurer of unincorporated insurance underwriting syndicates transacting business in New York, by delivering copy of summons and complaint to corporation's managing agent within state, *held* to give court jurisdiction.

3. **Corporations** ⟨⟩**1—"Corporation" is legal entity, which can act only through agents.**

"Corporation" is legal entity, which can act only through agents.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corporation.]

4. **Associations** ⟨⟩**20(2) — Suit permitted against president or treasurer of association (General Associations Law N. Y. § 13).**

General Associations Law N. Y. § 13, permits action against president or treasurer of association, for purpose of doing away with inconven-

*Certiorari denied 46 S. Ct. 472, 70 L. Ed. —.

ience of having each individual member of association named as party to action and serving of process on him.

**5. Treaties ⊚⟞8—Treaty providing for reciprocal "commerce" between United States and Great Britain held not applicable to insurance business (Treaty with Great Britain of 1815, and as extended in 1827 [8 Stat. 228, 361]).**

Treaty with Great Britain of 1815, as extended by that of 1827, providing for reciprocal liberty of commerce between United States and Great Britain, *held* not to give British inhabitants or corporations right to carry on insurance business in this country; insurance not being "commerce."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commerce.]

**6. Associations ⊚⟞2—Constitutional law ⊚⟞249—State statute authorizing service of process on certain officers of unincorporated associations held not invalid, as violative of right to equal protection of law (General Associations Law [Consol. Laws N. Y. c. 29] § 13).**

General Associations Law N. Y. § 13, specifying on whom service may be made for associations does not violate right to equal protection of laws.

Hand, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by Edith Bobe, against Lloyds, a corporation, and others, for breach of an insurance contract. An order was entered setting aside the service of summons and complaint on named defendant, sued as treasurer of Lloyds Underwriters' Syndicate No. 670 and Lloyds Underwriters' Syndicate No. 671, and plaintiff brings error. Reversed.

William Otis Badger, Jr., of New York City (Paul D. Compton and Milo Otis Bennett, both of New York City, of counsel), for plaintiff in error.

Barry, Wainwright, Thacher & Symmers, of New York City (Herbert Barry, James K. Symmers, and Archibald G. Thacher, all of New York City, of counsel), appearing specially for Lloyds.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error brings this action to recover insurance she said she obtained for the loss of a diamond bracelet. She sues Lloyds, a corporation, as treasurer of Lloyds Underwriters' Syndicate No. 670 and Lloyds Underwriters' Syndicate No. 671, alleging in her complaint that each syndicate consisted of more than seven persons and that each syndicate was transacting business as an unincorporated association within the state of New York. The action was commenced in the state court and has been removed here. The defendants in error appeared specially and moved successfully to set aside the service of the summons and complaint. A binder was issued on September 5, 1924, by the American Agency Association, Inc., a New Jersey corporation, having a New York office for transacting business. It is joined as a defendant under the authority of section 213 of the New York Civil Practice Act, which provides for the joinder of defendants where the plaintiff is in doubt against whom his cause of action lies. The theft occurred 10 days after the binder was issued. [1, 2] The motion attacking the validity of the service of process is made upon the complaint and affidavits submitted by both sides. The complaint alleged that Lloyds, a corporation, acted in the transaction in the capacity of treasurer of each syndicate, that is to say, of a fund of not less than $10,000 in trust for the policy holders of said syndicate, and that such fund is made up of initial deposits made by each syndicate at the time it was originally constituted; further, of original guaranties deposited from time to time by the syndicate with its said treasurer, and of premiums received from time to time by Lloyds for and on behalf of the syndicates, which premiums were paid on policies of insurance issued by the syndicates; further, that it was the duty and function of Lloyds, acting in its capacity as treasurer, to administer these funds against losses accruing on said policy, that no part of the fund has been applied to the loss of the plaintiff in error and such payment has been demanded. It alleges that on the 5th of September, the American Agency Association, Inc., assuming to act as agent on behalf of each syndicate, made, executed, and delivered a binder of insurance, which is designated and entitled "covering note," wherein and whereby Underwriters' Syndicate No. 670 and Underwriters' Syndicate No. 671, therein designated as "Lloyds," agreed to insure, and did insure, plaintiff, therein designated as "your good self," in the sum of $10,000, upon certain jewelry therein designated. There is an allegation of authority and power on behalf of the agency, the payment of the premium to it, and fulfillment of the necessary covenants of notice of loss and obligation of each syndicate, and damages are demanded in the sum of $10,000.

Service was made upon Lloyds as treasurer by delivering a copy of the summons and complaint on the managing agent of the corporation within the state. Service of such process may be made within the statute of the state, if made upon the president or treasurer of an unincorporated association. Section 13 of the state General Associations Law (Laws N. Y. 1920, c. 915 [Consol. Laws, c. 29]) provides that an unincorporated association may be sued to recover any property "upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally. Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section."

The theory of the action as set forth in the complaint sufficiently describes each syndicate as an underwriting group which authorizes the issuance of the binder, and sufficiently describes each syndicate as an association within the contemplation of this state statute. The affidavits support these allegations. But we must be guided by the complaint in testing the sufficiency of the allegations as to whether or not the defendants are sued as an association within the meaning of the state statute. That sets forth that the corporation of Lloyds was constituted trustee for the benefit of the guaranty and on behalf of those of the underwriting syndicate in respect of its engagements in that capacity. It appears by the affidavits that premiums were paid into trust accounts and are retained under special deeds of trust.

A question is presented whether Lloyds should be considered as an entire organization for the purpose of carrying on an insurance business, or whether it should be held that there are two separate and distinct entities involved, the corporation, on the one hand, and the underwriting members, on the other, and that, in regard to the undertaking of the members, the corporation is in no way liable, and has no interest which may be made the object of the suit. For the purposes of our consideration, we shall not be concerned with the method of Lloyds business, or how it is carried on. We are concerned directly only with its action as treasurer of each of the syndicates here referred to. It is only in that capacity that they are sued. If the allegations be true, then there was organized an unincorporated association for each syndicate, with Lloyds, a corporation, as its treasurer.

Our further inquiry must be—and as to this we may look to the affidavits—whether Lloyds does business in the state of New York, and whether it had a managing agent who might be served in the state of New York. There is sufficient in the allegations of the complaint which indicates that Lloyds, a corporation, holds and administers the funds belonging to each syndicate which are applicable to the payment of loss. We are not presently concerned with the manner in which the loss is paid.

It is clear that the individuals and corporations making up the associations are united in common purpose, which is the carrying on of insurance by the underwriting syndicates. They have no charter, but function practically as a corporation; each syndicate appointing its agent to carry on its common enterprise. As stated in the affidavit of the superintendent of insurance of the state of New York:

"That the corporation of Lloyds does not as such do an insurance business, but that Lloyds insurance policies are issued by underwriting members of Lloyds by subscription of their names individually or by underwriting agents acting for a syndicate, all acting in association upon their several liabilities to the extent specified in the policies by a proportion of the risk set opposite their several names."

The Supreme Court recently defined the term "association," as "a term used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise.'" See Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949. There a Massachusetts trust created under the laws of Massachusetts was held to be an association within the meaning of the antitrust law. A miners' labor union was also considered an unincorporated association. United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762. And members of an unincorporated association of underwriters are liable as joint insurers under a certificate of insurance issued by their agents under and subject to the conditions of a certain open policy, the contents of which were unknown to the insurer, but what the certificate stated was issued by the association, although the policy was in fact made by the members of

the association in their separate individual capacity, and under its terms each underwriter was held to assume his proportionate part of the aggregate amount payable to the insured in the event of loss. Imperial Shale Brick Co. v. Jewett, 169 N. Y. 143, 62 N. E. 167.

It is clear from the record that all premiums received at Lloyds are paid into the trust fund and are administered by a committee of Lloyds against the loss accruing on outstanding risks; and it is alleged that Lloyds acted as treasurer. Thus the corporation received the funds and pays out the money upon claims arising on the policies issued as treasurer of the syndicates. A foreign corporation has been held to be "any person" entitled to equal protection of the law under the Fourteenth Amendment, and by analogy a foreign corporation may be a person within the definition of a person who may be a party to an association within the definition of Hecht v. Malley, supra, and under section 13 of the General Associations Law referred to. Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819; Southern Ry. Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 45 L. Ed. 536, 17 Ann. Cas. 1247. If an individual had been acting as treasurer of these syndicates, and had been found within the jurisdiction of the court, undoubtedly service upon that individual would be sufficient.

[3] As has often been said, a corporation is in law an entity, which can act only through agents, and the managing agent appointed in this instance was served with the summons. Under section 229 of the New York Civil Practice Act, personal service of the summons and complaint on a foreign corporation must be made by delivering a copy thereof within the state, if a designation be made of some person upon whom service might be made, or if such a designation be not in force, or if neither the person designated nor any officer specified within the act can be found with due diligence, to a cashier, a director, or managing agent, if the corporation be within the state. The person served here was the managing agent within the state. The corporation is subject to the jurisdiction of the court, because it does business within the state, regardless of the nature of the business, and service upon its managing agent gives jurisdiction to the court from which the process is issued.

[4] Within the state of New York, this service would be sufficient. New York Board of Fire Underwriters v. Whipple, 36 App. Div. 49, 55 N. Y. S. 188; Neal v. Hutcheson (Sup.) 160 N. Y. S. 1007; Heitkamper v. Hoffman, 99 Misc. Rep. 543, 164 N. Y. S. 533. There the statute permits a suit to be brought against the president or treasurer, for the purpose of doing away with the inconvenience of having each individual member of the association named as a party to the action and process served upon them. For the same reasons the rule prevails in the national courts. United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762; Meinhart v. Contresta (Sup.) 194 N. Y. S. 593.

It was said in Hoey v. Coleman et al. (C. C.) 46 F. 221: "But the laws of this state authorize a suit in behalf of such an association to be brought in the name of its president, and the practice and mode of proceeding in the federal courts at law is regulated by the practice prevailing in the courts of the state in which the federal court is held, and required to conform as near as may be to the practice of the state courts; and I cannot regard it as in the least doubtful that a suit at law to recover the amount of the present tax could be brought in this court in the name of the president of the association." See, also, In re Tidewater Coal Exchange (D. C.) 274 F. 1008.

It is argued that for many years the individuals making up one or more of these syndicates have issued policies which were regarded as not suable in this country; but that presents no obstacle to this action. The question here is whether the controversy is one for which a remedy is offered. We are referred to Flexner v. Farson, 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250, as an authority against these views. There one Flexner was agent of the defendant in Kentucky, and was served with a writ out of the court of that state under a statute permitting service if the defendant did business therein. Judgment was obtained, and later an action was brought in the state courts of Illinois. That court held the judgment void for lack of jurisdiction, and when the case reached the Supreme Court, under the full faith and credit clause, the judgment was affirmed.

The action was against a copartnership made up of individuals. Holmes, J., said: "The analogy of suits against insurance companies based upon such service is invoked. Mutual Reserve Fund Life Association v. Phelps, 190 U. S. 147 [23 S. Ct. 707, 47 L. Ed. 987]. But the consent that is said to be implied in such cases is a mere fiction, founded upon the accepted doctrine that the

states could exclude foreign corporations altogether, and therefore could establish this obligation as a condition to letting them in." There it was held that the state had no power to exclude the defendants (who were individuals) and on that ground, without going further, held that the analogy failed and that the Kentucky judgment was void, but pointed out that the power to make such provision against a foreign corporation springs from the power to exclude such corporations from local business, whence by fiction the continued agency to receive service is attributed to the corporation's implied consent, and there is no room for implying consent in the case of nonresident natural persons, since the power to exclude from local business does not exist as to them. In the case of the individual underwriters to these syndicates, they are in the same position as the principals in Flexner v. Farson, supra, and no power exists to exclude them from doing business within the state of New York.

[5] The treaty of 1815 between Great Britain and the United States (8 Stat. 228), and as extended by that of 1827 (8 Stat. 361)—Malloy, vol. 1, pp. 624–645—providing that between the two powers there shall be a reciprocal liberty of commerce, that the inhabitants of either "shall have liberty freely and securely to come with their ships and cargoes to all such places * * * to which other foreigners are permitted to come, to enter into the same, and to remain and reside in any parts of the said territories, * * * and generally the merchants and traders of each nation, respectively, shall enjoy the most complete protection and security for their commerce, but subject always to the laws and statutes of the two countries," does not give the corporations and inhabitants of Great Britain power to enter this country and carry on the business of insurance. Insurance is not commerce. Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357. The treaty has no application. While the state would have no power to exclude the individual underwriters from doing insurance business within its borders, the treaty referred to would be no protection to this end as argued.

Under article 4, § 2, of the federal Constitution, individuals are entitled to all the privileges and immunities of the citizens of the several states. This guaranty of the Constitution forms the basis of the decision in Flexner v. Farson, supra. The distinction between the application of the rule of exclusion to corporations as opposed to citizens is pointed out in Paul v. Virginia, supra. There it was said:

"Now a grant of corporate existence is a grant of special privileges to the corporators, enabling them to act for certain designated purposes as a single individual, and exempting them (unless otherwise specially provided) from individual liability. The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. * * * The recognition of its existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states, a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. * * * They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest."

[6] The statute of the state of New York, specifying upon whom service may be made, or requirement to designate a person upon whom service may be made, are conditions which may be imposed upon the admission of foreign corporations to do business within the state. Thereafter they are entitled to equal protection of the laws. Equal protection would result from service upon the managing agent in the present case. Syndicates, as unincorporated associations which are within the jurisdiction of the state, doing business therein through their treasurer, may be served with process through said treasurer. Since it appears that the method of obtaining service upon them is set forth in section 13 of the General Associations Law, it is proper to employ the prescribed method of service alike upon all associations within the jurisdiction. The corporation was within the state, doing business here, and acting through its managing agent as treasurer of the syndicate. Service on him was as effective as personal service upon an individual treasurer within the state could have been. Service was lawfully made, and it was error to enter the order here reviewed.

Order reversed.

HAND, Circuit Judge (dissenting). The defendants over whom jurisdiction is here claimed are 31 individuals, divided into two syndicates, of 12 and 19 members, respectively. The plaintiff's theory is that each syndicate constitutes an unincorporated association, and that personal jurisdiction has been got over each by serving its treasurer, a

British corporation, Lloyds, under section 13 of the General Associations Law of New York. It must therefore appear that Lloyds is the treasurer of each syndicate, that personal jurisdiction has been got over it, and that through it personal jurisdiction follows as against all the members of each syndicate, as a joint obligor. For the sake of simplicity I shall assume with the plaintiff that Lloyds is the treasurer of each syndicate and that it has been personally served with process in the state of New York. It seems to me doubtful that the first is true, and I should wish to scrutinize the second, if the case depended upon it; but, as I disagree with my brothers upon the third, I may pass at once to that.

The record contains not a syllable to show that either of these syndicates had ever underwritten another risk in the state of New York. Regarded as entities, as the plaintiff wishes us to regard them, they have never "done business" in the state, as that phrase is used in this connection. The plaintiff must assert that the authorization of a single contract in New York subjects all the defendants to jurisdiction as respects that contract, regardless of the fact that it is unique, and that not a single defendant has ever set foot within the state. Nor can it help her case that other Lloyds syndicates yearly underwrite similar losses in large numbers. If Lloyds itself underwrote the policies and were the obligor, it would indeed be different; but the plaintiff makes no such claim, and her proof would fail if she did. After arguing that each syndicate is to be treated as a legal person, as much as a corporation, she may not ask us to tack the business of other such syndicates for purposes of jurisdiction.

It is well-settled law that, even when the cause of action is of local origin, a corporation may not be sued unless it is "present" within the state. Whatever may in the end be the meaning of that word, there is no doubt that it involves some continuity of corporate activity, and that the single transaction out of which the cause of action grows is not by itself enough. Lumbermen's Ins. Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810; St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Rosenberg Co. v. Curtis Brown Co., 260 U. S. 516, 43 S. Ct. 170, 67 L. Ed. 372; Bank of America v. Whitney Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594. The same rule was applied to a cause of action arising else-where in Phila. & Reading Ry. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710, and perhaps in General Investment Co. v. Lake Shore Ry., 260 U. S. 261, 43 S. Ct. 106, 67 L. Ed. 244, though it would seem under Simon v. So. Ry., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492, that the question of the corporation's "presence" is in such cases irrelevant. In any event, if these syndicates had been corporations, there cannot be the slightest doubt that the process would have been void. Natural persons, either severally or in a group, are surely as immune from extraterritorial jurisdiction as artificial persons.

Apparently assuming that the case is the same as though the syndicates had been "present" within the state, the plaintiff attempts to distinguish Flexner v. Farson, 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250. Perhaps the doctrine of that case is not to be extended to associations or partnerships. We need not decide that question here. If it is, it would apply to the case at bar, because the decision turned upon the inability of the state to exclude the defendants from its borders. Precisely the same inability exists as respects aliens. The Passenger Cases, 7 How. 283, 12 L. Ed. 702; Henderson v. N. Y., 92 U. S. 259, 23 L. Ed. 543; Chy Lung v. Freeman, 92 U. S. 275, 23 L. Ed. 550; People v. Compagnie, etc., 107 U. S. 59, 2 S. Ct. 87, 27 L. Ed. 383. Furthermore, the treaty of commerce and navigation with Great Britain insures aliens the right of entry. It is indeed argued that the word "Commerce" in such treaties is to be limited to its meaning in the interstate commerce clause. That appears to me an unreasonable and improbable interpretation, but it is unnecessary to decide the point. If these syndicates are to be classed as individuals, Flexner v. Farson, supra, would rule, even if they were "present."

It seems to me quite unnecessary to consider the difficulties which that case in any event raises. It had been held in International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, that a state's power to subject corporations to its process was not dependent upon its power to exclude the activities out of which the cause of action arose. It had also been said in Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222, that a state might attach to the right of a motorist to pass through the state the condition that he should be subject to process. New York surely may regulate, and indeed in article 10 of its Insurance Law (Consol. Laws, c. 28) has reg-

ulated, the business of Lloyds syndicates "present." Maybe it could attach a similar condition to the underwriting of a single risk. It has not done so, and I can see no necessity for deciding a matter which is certainly not free from all doubt. My decision in U. S. & Cuban, etc., Co. v. Lloyds (D. C.) 291 F. 889, need not rest upon the doctrine of Flexner v. Farson, supra.

But, if I am wrong in thinking that there must be some continuous activity within the state, it seems to me plain that at all events section 13 has no applicability to the case at bar. I have assumed, though it is doubtful, that Lloyd's was a treasurer within the meaning of the statute. Generally both the president and the treasurer are joint obligors, and in such a case, under section 1197 to 1200 of the New York Civil Practice Act, in an action against all the members, the judgment could be taken against all, and execution would go, not only against those served, but against the joint assets. Such an action might be begun under section 13 simply by naming the president or treasurer. But the plaintiff must go further; she must say that the statute covers a case where no joint obligor is served at all. Now, some execution under such a judgment must be possible. What could it be? Certainly not against the members severally, for that is not possible under the sections of the Civil Practice Act just cited. Nor against the joint assets, for the same reason. Such a judgment would be brutum fulmen, an impotent gesture, which no other court need respect, or would.

We are dealing merely with a detail of local procedure, a means for avoiding the need at common law of naming a great number of parties and serving them all. This device by our decision is being extended to cover a case where at best it would raise grave constitutional doubts, and must fly in the teeth of other statutes of the state in pari materia. Until we are forced so to construe it by an authoritative decision of the highest court, I submit we should not contradict its apparent-purpose. If we are right, a California partnership of eight partners, which has an employee called a treasurer, may be forced to defend an action in New York, if he passes through and is caught; and this by virtue of a statute which was at least primarily intended only to avoid the procedural hardships of the common law in cases of numerous joint debtors.

I dissent.