Village of Fairlawn *v.* Fuller et al.

[Cite as Village of Fairlawn v. Fuller, 8 Ohio Misc. 266.]

(Nos. 330724-39, incl., 332655-58, incl., 332661-71, incl., 332673-77, incl. and 332680—Decided October 21, 1966.)

Akron Municipal Court.

*Mr. Gilbert Hartz*, for plaintiff.
*Mr. Max W. Johnstone*, for defendants.

VAN BERG, J.  On May 3, 1965, the Council of the Village of Fairlawn, Summit County, Ohio, enacted ordinance No. 1965-50, forbidding the transaction of business on Sunday in language identical with that of Section 3773.24, Revised Code, but providing somewhat more severe penalties.

The 37 cases before the court are prosecutions for violation of the ordinance, the affidavit in each case charging that the defendant "did engage in common labor on Sunday" by the sale of one or more items of merchandise.  All of the cases were commenced in the Mayor's Court of the Village of Fairlawn during August and September, 1965.

The cases were then referred or transferred to this court in October and November, 1965.  The docket sheets attached to the affidavits do not reveal the reasons or authority for transfer.  Because no question has been raised in this regard by counsel for either party, we assume that all of the cases are properly before this court.

Upon trial of the cases before this court all defendants by their attorney entered pleas of *no contest*.  The correctness of the copy of the Fairlawn Village ordinance furnished to the court was stipulated, and it was further stipulated that the defendants, acting as cashiers employed by the Giant Tiger Store in the Village of Fairlawn, on the said Sundays, as alleged, rang up sales on their cash registers, accepted payment for merchandise, as alleged, and bagged or packaged the same for customers of the store.

The cases were then submitted after brief statements as to the facts and the applicable law by counsel.  Time was allowed for the filing of briefs.

The defendants' brief refers to an attached transcript of trial proceedings in the Mayor's Court of Fairlawn Village in the cases of six persons not employed by the Giant Tiger Store.  It also contains various recitals of fact and quotes the full text of a newspaper editorial, all in support of the defense claim that these prosecutions are unlawful because they deny to the defendants the equal protection of the laws.

The prosecution's brief, similarly, contains recitals of facts and an attached affidavit, controverting the factual claims made by the defense. The prosecution's brief further argues (See pages 6, 7 and 8) that all such questions should have been raised by preliminary motions, and that because of the defendants' failure to do so, the court is now limited in its consideration of the case to the affidavits and the stipulations of counsel. With this contention we cannot agree. The sections referred to by the prosecution relate to defects in indictments or affidavits that can be reached by motions.

We must remember that all defendants pleaded *no contest*. Section 2937.07, Revised Code, undertakes to set out the effect and application of that plea.

"If the plea be 'no contest' or words of similar import in pleading to a misdemeanor, it shall constitute a stipulation that the judge or magistrate may make a finding of guilty or not guilty from the explanation of circumstances, and if guilt be found, impose or continue for sentence accordingly. Such plea shall not be construed to import an admission of any fact at issue in the criminal charge in any subsequent action or proceeding, whether civil or criminal."

The writer has not seen any discussion by any Ohio court of what is meant by "explanation of circumstances."

If the intent of the General Assembly in providing for the plea of *no contest* a few years ago was for the convenience of traffic offenders who wished to avoid having *guilty* pleas used against them in accident cases growing out of their traffic law violations and who then had no alternative but to plead *not guilty* and stand trial, with consequent expense and loss of time, it would have been enough to authorize the use of the plea *nolo contendere or no contest* in misdemeanor cases and say nothing more. The plea *nolo contendere*, Anglicized as *no contest*, has a definite and well-recognized meaning in law. It is an implied admission of guilt and, for the purposes of the case only, equivalent to a plea of guilty. See 22 C. J. S. 1205.

However, the plea of *no contest* thus provided by the General Assembly is new in law and not synonymous with the ancient plea of *nolo contendere*. The language quoted from the statute cannot be reconciled with the recognized import of the plea of *nolo contendere*.

The language of the statute permitting a plea of no contest and a finding of either guilty or not guilty "from the explanation of circumstances" lacks definition or limitation. It opens the door to informal statements containing hearsay and opinion, and seems to dispense with testimony under oath and cross-examination.

The court must conclude that the statements made by counsel for both parties at the time of trial and as restated and amplified by both in their briefs fall within the term "explanation of circumstances" as authorized by the statute in connection with pleas of *no contest*.

Had the defendants pleaded *not guilty*, they could under their defense of intentional discrimination in the enforcement of the ordinance have offered evidence to support that claim. (See *People* v. *Harris*, 182 Cal. App. 2d Supp. 837; *People* v. *Drug Co.*, 225 N. Y. Supp. 2d, 128.) The prosecution could have offered evidence in rebuttal. Very likely the net effect of the evidence on both sides would not have been greatly different from the factual claims made in the respective briefs. With allowances for their opposing points of view and different sources of information, the writer does not doubt that the lawyers who prepared the briefs related the facts in utter good faith as they knew them or believed them to be.

From the statements and explanations before the court, eliminating claims directly controverted, a clear showing of discriminatory enforcement emerges.

1. *During the period following the passage of the ordinance, the only persons prosecuted at the instance of the village authorities for violation of the ordinance, were employees of the Giant Tiger Store.* Certain other persons, however, were arrested upon affidavits filed by employees of Giant Tiger Stores.

The stenographic transcript of the trials of six such persons before the Mayor of Fairlawn Village is attached to defendants' brief. After the prosecutions now before this court were commenced, two managers of Giant Tiger Stores went to the Summit Mall, accompanied at their request by Officer Bosley of the Fairlawn Police Department, on Sunday, October 3, 1965, and found a number of crews of workmen engaged in laying tile and carpet, working on scaffolding, and doing elec-

trical and other work about the premises. Affidavits were filed by the Giant Tiger employees against five such persons. At their trials on November 8, 1965, about five weeks later, all of the defendants pleaded *no contest*. Two of the defendants could not be identified and their cases were dismissed.

The third defendant, Desmond Scott, was identified and two witnesses testified that they saw him working on his hands and knees laying carpet. Officer Bosley testified that he recognized Scott as being there on that day but could not recall what he was doing. No defense was offered. The Mayor dismissed the case, after making an erroneous review of the testimony.

The fourth defendant, A. Ekstedt, was positively identified by two witnesses, who testified that they saw him laying carpet and that he signed his name to a slip of paper offered in evidence. Officer Bosley could not recall seeing the defendant. Ekstedt was found guilty by the court and fined $25.00 and court costs.

The fifth defendant, Bernard Joseph, was identified by two witnesses as one of the men they observed, with tools in their hands, working on carpeting on their hands and knees. Officer Bosley could not identify this defendant. No defense was offered. The mayor again summed up the evidence erroneously and dismissed the case.

The sixth case tried in the Mayor's Court was that of Betsy Freeman, charged with engaging in common labor by selling cigars. Her plea was *no contest*. The prosecuting witness, Douglas Swan, employed in the Giant Tiger Store, testified very credibly that on Sunday, October 3, 1965, he entered the Riviera Bowling Lanes in Fairlawn Village and purchased cigars from the defendant, an employee of the establishment. No defense was offered.

The mayor summed up as follows:

"As part of the conviction under this charge, there must be some tangible evidence or some additional witness to support the charge presented in the affidavit.

"You say you have no cash register receipt? (To Swan) "No. * * *

"Since there is no additional witness to support the charge of engaging in common labor and since no evidence of any type has been presented by the prosecuting witness, this court will

dismiss the charge without prejudice against Betsy Freeman."

These prosecutions are referred to on pages 2 and 3 of defendants' brief and pages 3 and 4 of the prosecution's brief.

2. *While proceeding with considerable vigor against the employees of the Giant Tiger Store, the village authorities knowingly permitted violations of the ordinance by other persons.*

This is implicitly conceded on page 3 of the prosecution's brief: " * * * the opening date of the Summit Mall had been announced and the Sunday work going on was temporary for a period of not to exceed three weeks * * *"

The testimony of patrolman Harold Bosley of the Fairlawn police in the five prosecutions of workmen at the Summit Mall is significant. We take the following excerpts of Officer Bosley's testimony from the trial transcript.

At page 22:

"Q. Were you given an assignment by your superior officer? A. Yes, sir.

"Q. And what was that assignment? A. To enforce the Sunday Sales Law."

at page 24:

"Q. What did you observe in relation to the activities going on there at the time (at Summit Mall)? A. Well I did observe one or two men working on scaffolding, and also a group of men laying carpet and a—a lot of workmen walking around with work clothes on, but as far as seeing everyone actually working, I did not. I seen a couple of men working on scaffolding and a group laying carpet."

Similar testimony by the officer of his seeing workmen engaged in various jobs may be found at pages 41, 42, 57, 58, 87, 88, 100, 101, 102.

Although specifically assigned, he said, to enforcement of the Fairlawn Sunday closing ordinance, Officer Bosley arrested none of the persons he saw violating the ordinance in his presence. We note that the defendants now before the court were arrested on view.

It is clear that the police department of Fairlawn Village had no interest in enforcing the Sunday closing ordinance against the various contractors and workmen at the Summit Mall. However, the prosecutor in the Mayor's Court presented

the cases fully and fairly and took one or more exceptions to the mayor's rulings.

It cannot be doubted that the law enforcement officers of the village, including its chief executive, the mayor, consciously and intentionally discriminated in the enforcement of the ordinance. The enforcement directed against the defendants, all employed by the same company, was concurrent with deliberate failure to enforce the ordinance against others who violated it with the full knowledge and obvious approval of the village authorities.

The Supreme Court of the United States has uniformly struck down not only unequal and discriminatory laws but arbitrary and discriminatory enforcement of laws as well, under the guaranty of the equal protection of the laws extended to all persons by the Fourteenth Amendment.

We quote from *Yick Wo* v. *Hopkins*, 118 U. S. Reports 356 at page 373, 374, decided 80 years ago by the U. S. Supreme Court:

"Though the law itself be fair on its fact and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. This principle of interpretation has been sanctioned by this court in *Henderson* v. *Mayor of New York*, 92 U. S. 259; *Chy Lung* v. *Freeman*, 92 U. S. 275; *Ex Parte Virginia*, 100 U. S. 339; *Neal* v. *Delaware*, 103 U. S. 370; and *Soon Hing* v. *Crowley*, 113 U. S. 703."

In the case of *People* v. *Drug Co.*, 225 N. Y. Supp., 2nd Series, 128 (1962), the Appellate Division of the N. Y. Supreme Court in a well-considered opinion discusses and upholds the principle that the equal protection clause applies to all agencies of government. The court reversed the trial court because it excluded evidence offered to substantiate the defendant's claim of intentional discrimination.

The same defense was raised in the case of *S. Euclid* v. *Bondy*, 92 Ohio Law Abs. 108, 26 O. O. 2d 69, but it was not considered because there was no evidence that the city of South Euclid was intentionally discriminating against the defendant.

It is a basic rule of law, so well recognized that it requires no citation of authority, that an offender cannot excuse his violation of the law by showing that others equally guilty have not been prosecuted. Since any system of law enforcement must always fall short of bringing all offenders to justice, such defense if accepted would make all law enforcement impossible.

But where, as in the cases now before this court, it is shown that there was intentional discrimination—when the persons directly charged with enforcement of the ordinance chose to prosecute particular violators and to permit other violators to proceed unmolested with their full knowledge and approval, the court must dismiss the prosecutions, not because the defendants are not guilty of the offense charged but because a court cannot take part in or countenance prosecutions conducted in violation of the constitutional rights of the defendants. The courts, above all other agencies of government, are bound to accord to all persons the equal protection of the laws.

Counsel for the defendants further urges that the Fairlawn ordinance is "not constitutional as applied" and "vague and indefinite."

This court is bound by the decisions of the Supreme Court of Ohio affirming the validity of the state law in *State* v. *Maynard*, 1 Ohio St 2d 57; 30 O. O. 2d 32, and *State* v. *Footlick*, 2 Ohio St 2d 206; 31 O. O. 2d 411. The validity of the ordinance, which follows the present form of the state law, cannot be questioned by this court.

The conclusions reached in the cases before the court are based upon the court's finding that contemporaneously with the maintenance of these prosecutions the responsible authorities of Fairlawn Village openly ignored other violations of which they had full knowledge and consciously and intentionally failed to enforce against other violators the ordinance sought to be enforced against these defendants.

The court therefore quashes the 37 affidavits now before it, dismisses the prosecutions with prejudice, and discharges the defendants to the same effect and in the same manner as if found not guilty.