Jackson, Appellant, *v.* The State of Ohio, Bureau of Motor Vehicles, et al., Appellees.

[Cite as Jackson v. State (1970), 25 Ohio Misc. 45.]

(No. 14685—Decided May 13, 1970.)

Girard Municipal Court.

*Mr. David Orosz,* assistant county prosecutor, for appellees.

*Mr. James A. Modarelli, Jr.,* for appellant.

Luarde, J. This matter came on to be heard before this court on February 11, 1970, upon the amended petition of J. T. Jackson, Jr., of Hubbard, Ohio, appellant herein, in which he incorporated by certain specific references, as though fully rewritten, all the allegations set forth in paragraphs (1) through (7), (9), and (10) of his original petition. The action (appeal) was brought from the order of suspension of his driver's license or privilege to operate a motor vehicle by the Bureau of Motor Vehicles of the state of Ohio, through its Administrative Assistant, Homer

Hall. The appellant prayed that this court enter judgment in favor of the appellant overruling the suspension order entered by the Registrar of the Bureau of Motor Vehicles and to permit him to go hence with his costs herein expended.

The appellant filed his petition on January 10, 1969. He filed his amended petition on July 3, 1969. On July 30, 1969, he filed a motion for judgment and attached thereto a memorandum in support of the motion in re "The Appeal of Dudley," decided June 19, 1969, by the Hon. Judge Reddy of the County Court, Mahoning County, Ohio. Attached to the motion was a copy of Judge Reddy's opinion, which is now reported as *In re Dudley,* 19 Ohio Misc. 165. Appellant's motion was taken under advisement by the court and is now overruled.

At the conclusion of the hearing appellant requested the court to make findings of fact and conclusions of law in this case, and the court now proceeds to make such findings.

### Findings of Fact

At the hearing the following facts were admitted by the defendant to be true:

(1) Defendant was arrested on 11-16-68 by a member of the Youngstown Police Department for driving a motor vehicle on the highway under the influence of alcohol.

(2) The defendant entered a plea of No Contest to the charge and was found guilty of the charge by the Hon. Judge Joseph Donofrio of the Youngstown Municipal Court on December 17, 1968.

(3) The defendant refused to submit to a chemical test, although advised of the consequences thereof by the arresting officer, Chester Puskarick, and his associate officer, James W. Amrich.

(4) That the defendant was driving a motor vehicle under the influence of alcohol and was placed under arrest, and that the officer was justified in making such an arrest.

The following exhibits were placed in evidence by the appellant herein:

(A) Notification of refusal to submit to a chemical test, signed by the arresting officers.

(B) Copy of a letter sent by certified mail to the appellant herein by Homer Hall, Administrative Assistant of the Bureau of Motor Vehicles, dated December 12, 1968, calling attention to the following facts:

That an affidavit was in their office filed by the arresting officers and certifying that on November 16, 1968, the officers had reasonable ground to believe that appellant was operating a motor vehicle under the influence of alcohol; that he was placed under arrest for the offense; that he was requested by the arresting officer to submit to a chemical test, with which request he refused to comply, and was advised of the consequences of such refusal.

The letter further informed appellant that in accordance with the provisions of R. C. 4511.191(D) as amended effective March 10, 1968, his driver's license or privilege to operate a motor vehicle in this state was suspended for a period of six months, effective December 12, 1968, and any Ohio license issued to the appellant, and a duplicate thereof, must be returned to the office of the Bureau of Motor Vehicles immediately. The balance of the communication further advised the defendant of his rights under the provisions of the Ohio Revised Code mentioned in that communication. Attached to this communication of Homer Hall was a copy of a signed certified mail receipt, No. 92336, endorsed "J. T. Jackson," appellant herein, on the date of delivery, December 13, 1968.

(C) A communication dated July 30, 1969, from the Bureau of Motor Vehicles bearing the signature of Homer Hall, Administrative Assistant thereof, in response to the petition filed in this case, was addressed to the Clerk of the Girard Municipal Court, Girard, Ohio, and attached thereto was a certificate certifying that the attached copy of the affidavit of the arresting officer and the copies of other relevant, competent, and material evidence is a complete record of the proceedings in this case, signed by Fred Rice, Registrar, Bureau of Motor Vehicles.

No other evidence was introduced or given by the appellant herein in this case.

The court finds from the affidavit of the arresting officers that the date of violation was November 16, 1968.

The case was argued briefly by counsel for the appellant and the assistant county prosecutor stated that he would submit the recently-issued opinion of the Attorney General, No. 69-125, pertaining to the rights of the Bureau of Motor Vehicles to suspend the license of a driver who has refused to submit to a chemical test under the provisions of R. C. 4511.191. This opinion was received and couched therein there is a reference to the recent case of *In re Williamson* (1969), 18 Ohio Misc. 67, *supra*. The case was taken under advisement.

In studying the pleadings and the various papers (marked "Appellant's Exhibit No. 1") submitted to this court in this proceeding, the court finds that the appellant herein failed to file his petition (appeal) within the 20 days of the mailing of the notice by the Bureau of Motor Vehicles, which is in evidence, under the provisions of paragraph (F) of R. C. 4511.191. The appellant's original petition herein was not filed in this court until the 10th day of January, 1969. He signed a receipt, which is in evidence as an exhibit, dated December 13, 1968, for the notice of the order of suspension of the B. M. V., as noted in their letter to the appellant.

For this reason the court finds that the appellant's appeal is not tenable, as it was not filed in due season within the 20 days required by law; that by reason thereof appellant's petition and amended petition are dismissed at the cost of the appellant.

## Conclusions of Law

The relief sought by the appellant herein involves the paramount question as to the right of the Registrar of the Bureau of Motor Vehicles to suspend the driver's license or permit to drive of a person who has refused to submit to a chemical test pursuant to the provisions of R. C. 4511.191, where the driver either pleads "guilty," or, pleading "no contest," is found guilty of driving under the influence of alcohol.

That statute, first of all has been held to be constitutional, and while the question has not been raised in this court, it is noteworthy to point out that the Supreme Courts

of several states have refused to pass upon the constitutionality of their Implied Consent Laws because the question was not properly raised. Several states have met the issue squarely and held such law is valid and constitutional. In one of these cases, *Lee* v. *State,* 187 Kan. 566, the Supreme Court of Kansas said:

"It is an elementary rule of law that the right to operate a motor vehicle upon a public street or highway is not a natural or unrestrained right, but a *privilege* which is subject to reasonable regulation under the police power of the state in the interest of public safety and welfare." (Emphasis added.)

"The use of the public highways by motor vehicles, with its consequent dangers, renders the necessity of regulation apparent. Courts may take judicial notice of the problem, both local and national, of the drunken driver on the highways with its ever increasing toll of injuries and death. In line with many other states, Kansas, through its inherent police regulatory powers, in an effort to promote public safety and welfare, has seen fit to enact the statutes heretofore quoted or summarized—one of which, 8-1001, puts a choice to a motorist who is accused upon reasonable grounds of driving while under the influence of intoxicating liquor."

"The statute does not compel one in plaintiff's position to submit to a blood test, and does not require one to "incriminate himself" within the meaning of constitutional provisions. And neither is it violative of due process. * * * It gives the driver the right of choice of the statutory suspension of his license, and further gives him the right to a hearing on the question of the reasonableness of his failure to submit to the test."

The Supreme Court of Nebraska, *Baer* v. *Schaap,* 172 Neb. 414, in upholding the validity of its statute, also said:

"The plaintiff in his petition alleges that the revocation of his driver's license was arbitrary and capricious because he was not convicted of an offense of operating a motor vehicle under the influence in the original court. The fact of acquittal of a criminal charge of operating a motor

vehicle while under the influence of alcoholic liquor does not have any bearing upon a proceeding before the director for the revocation of a driver's license under the provisions of law separate and distinct from criminal statutes."

"A license to operate an automobile upon the highways of the state is a privilege and not a property right, and the power given the director to suspend such operating privilege is an administrative and not a judicial function."

"Article 1, Section 12, of the Constitution of this state provides: 'No person shall be compelled, in any criminal case, to give evidence against himself, * * *.'

"The essence of the 'implied consent law' is that by driving a motor vehicle on the public highway, the operator consents to the taking of a chemical test to determine the alcoholic content of his body fluid. By the act of driving his car, he has waived his constitutional privilege of self-incrimination, which has always been considered to be a privilege of a solely personal nature which may be waived. See *Schutt* v. *MacDuff*, 205 Misc. 43, 127 N. Y. S. 2d 116."

Constitutional questions have arisen, growing out of cases involving charges of operating a motor vehicle while intoxicated relating to physical tests and chemical tests. Many of these cases hereinafter referred to have a direct relationship to the privilege of operating a motor vehicle while under the influence of alcohol, and the consequences thereof, especially as they relate to the loss of driving privileges in this state.

In the case of *City of Toledo* v. *Dietz*, 3 Ohio St. 2d 30, the court, in an opinion by Judge Herbert, held:

"1. Where a person charged with the offense of operating a motor vehicle under the influence of intoxicating liquor, contrary to the provisions of a municipal ordinance, voluntarily submits to a 'Harger drunkometer test,' during a 15-minute investigation at police headquarters, in the absence of any coercion and after being informed that the test is voluntary and that he is not required to answer any questions, there exists no deprivation of rights under the Fifth, Sixth and Fourteenth Amendments to the Constitu-

tion of the United States or Section 10, Article I of the Constitution of Ohio.

"2. Where law enforcement officers communicate with the brother of a person charged with the offense of operating a motor vehicle while under the influence of intoxicating liquor, there exists sufficient compliance with the provisions of Section 2935.14, Revised Code, which provides that accused must be furnished facilities to communicate with an attorney or other person for the purpose of obtaining an attorney."

In the case of *Piqua* v. *Hinger* (July 3, 1968), 15 Ohio St. 2d 110, the question was raised as to whether the ruling in *Miranda* is applicable in misdemeanor cases, and the Supreme Court held:

"1. Physical tests, whereby a person accused of operating a motor vehicle while under the influence of intoxicating liquor is required to write his name and address, to pick up coins placed on the floor, to close his eyes and touch his hand to his nose, and to submit to a Breathalyzer test, and motion picture films made thereof, are real or physical evidence and not such communication or testimony of the accused as is protected by the constitutional privilege against self-incrimination.

"2. Testimony regarding such tests, and the films thereof, are not subject to exclusion by reason of the failure to advise the accused of his constitutional rights as required by *Miranda* v. *Arizona,* 384 U. S. 346, and are admissible in evidence irrespective of whether such advice is given. (*Schmerber* v. *California,* 384 U. S. 757.)"

At page 112, Judge Herbert stated:

"In *Schmerber* v. *California, supra,* decided in the same term, but after *Miranda,* the United States Supreme Court held that admission into evidence of the results of a blood-alcohol test made on a blood sample withdrawn from a defendant over his objection, and his refusal to submit to such test, on advice of counsel, did not violate his constitutional rights. After considering its decision in *Miranda,* the court, in *Schmerber,* said, at pages 764 and 765:

"* * * both federal and state courts have usually held

that it [the privilege against self-incrimination] offers no protection against compulsion to submit to fingerprinting, *photographing*, or measurements, to *write or speak for identification*, to appear in court, to stand, to *assume a stance*, to walk, or to *make a particular gesture*. The distinction which has emerged, often expresesd in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence,' does not violate it.

"* * * Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds."

In the case of *Westerville* v. *Cunningham* (1968), 15 Ohio St. 2d 121, in an opinion written by Chief Justice Kingsley A. Taft, our Supreme Court held:

"1. The refusal of one accused of intoxication to take a reasonably reliable chemical test for intoxication may have probative value on the question as to whether he was intoxicated at the time of such refusal. (*Columbus* v. *Mullins,* 162 Ohio St. 419, distinguished.)

"2. One accused of intoxication has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication. (*Schmerber* v. *California,* 384 U. S. 757, followed.)

"3. The admission of evidence that one accused of intoxication refused to take a reasonably reliable chemical test for intoxication and comment thereon by counsel, do not violate any constitutional privilege against self-incrimination." (*Griffin* v. *California,* 380 U. S. 609, distinguished.)

Many other authorities were discussed in the court's opinion of this case including the case of *Columbus* v. *Mullins,* which the court distinguished in that case.

In *In re Williamson,* 18 Ohio Misc. 67, a Common Pleas decision of March 21, 1969, by Judge Hitchcock of Paulding County, the court, briefly put here, decided that:

"1. The action of the Bureau of Motor Vehicles in suspending a driver's license for refusing, while such driver's faculties are allegedly impaired, to submit to a chemical test of the level of alcohol in body fluids, when, upon sober reflection he pleads 'guilty' to the offense for which he was arrested, is in violation of his right to remedy by due course of law under Article I, Section 16, Ohio Constitution."

"4. Since the direct purpose of the implied consent law (4511.191) is to make available evidence of the truth in order that the primary criminal action may be prosecutted, the plea of 'guilty' in that case obviates such purpose."

Judge Hitchcock reversed the order of suspension by the Registrar of the Bureau of Motor Vehicles and pointed out that the defendant argued that under the circumstances of the case the administrative suspension of his driver's license for six months was unconstitutional, defendant having obviated by his conduct every purpose for which R. C. 4511.191, was enacted.

The judge, however, on page 72 of his opinion, discusses Article I, Section 16 of the Ohio Constitution and considered what he conceived to be the basic issue pertaining to this constitutional provision by posing the question as to whether or not the Bureau of Motor Vehicles has the right to suspend a driver's license for six months where a motorist refused to submit to a chemical test, and he answered the question "No," and then gave his reasons therefor. However, in his very next statement he said: "There can be no real doubt that Section 4511.191 R. C., on its face and in itself is constitutional." Citing *Schmerber* v. *California* (1956), 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908. *Westerville* v. *Cunningham* (1969), 15 Ohio St. 2d 121, *supra.* With this latter statement this court agrees.

Judge Hitchcock then discusses the difference between a guilty plea and a no contest plea to a criminal charge lodged against a driver for driving a motor vehicle under the influence of intoxicants, and said that even a plea of "no contest," as provided by R. C. 2937.06, would not

avail the appellant. (This is the plea entered by our appellant in the Youngstown Municipal Court before Judge Donofrio.) He stated further that under the common law this plea was known as *"nolo contendere"* and that it was formerly recognized as an implied confession of guilt. However, this court wishes to point out that under our statute, R. C. 2937.06, effective January 1, 1960, on the subject of pleas, states in part that the following pleas may be received in misdemeanor cases: (A) guilty; (B) not guilty; (C) no contest; (D) once in jeopardy. It is to be further noted, however, that R. C. 2937.07, action on pleas of "guilty" and "no contest" in misdemeanor cases, provides in part as follows:

If the plea be 'no contest' or words of similar import in pleading to a misdemeanor, it shall constitute a stipulation that the judge or magistrate may make a finding of guilty or not guilty from the explanation of circumstances, and, if guilt shall be found, impose or continue for sentence accordingly. Such plea shall not be construed to import an admission of any fact at issue in the criminal charge in any subsequent action or proceeding whether civil or criminal."

The plea of no contest authorized by this section does not imply an admission of guilt, since the court is required to make a finding of guilty or not guilty from the explanation of circumstances as decided in the case of *Fairlawn* v. *Fuller,* 8 Ohio Misc. 266.

It is needless to say that the *Williamson case, supra,* caused a great deal of temporary concern to the Registrar and Bureau of Motor Vehicles, and law enforcement officers generally, as well as the traffic courts, and particularly municipal courts, who handle these many cases throughout this state, and especially cases filed in the municipal courts under the provisions of R. C. 4511.191, paragraph (F), seeking relief from an order of suspension by the Registrar of Motor Vehicles for failure of a licensee to submit to a chemical test as required under the provisions of this statute, the Implied Consent Law.

However, the matter of what plea is entered in the

criminal charge of operating a motor vehicle under the influence of alcohol in a trial court or the results thereof has no bearing in these cases and has been obviated and the atmosphere cleared by the Supreme Court of this state in the recent case of *State* v. *Starnes,* 21 Ohio St. 2d 38, decided January 14, 1970, wherein the court decided and held:

"1. Section 4511.191, Revised Code, does not violate the search and seizure provision of the Fourth Amendment, nor the self-incrimination clause of the Fifth Amendment to the United States Constitution by providing that any operator of a motor vehicle upon the public highways in this state shall be deemed to have given consent to a chemical test to determine the alcoholic content of his blood if arrested for the offense of driving while under the influence of alcohol. (*Schmerber* v. *California,* 384 U. S. 757; *Westerville* v. *Cunningham,* 15 Ohio St. 2d 121 applied.)

"2. Section 4511.191(F), Revised Code, does not violate the due process clause of the Fourteenth Amendment to the United States Constitution by permitting suspension of a person's driver's license upon proof less than proof beyond a reasonable doubt that (1) a police officer had reasonable ground to believe the person had been driving a motor vehicle upon the public highways in this state while under the influence of alcohol (2) the person was placed under arrest (3) the person refused to submit to a chemical test upon request of the officer, and (4) the person was advised of the consequences of his refusal. *Proceedings under Section 4511.191(F), Revised Code, are civil and administrative in nature and are intended for the protection of the traveling public, and are independent of any criminal proceedings which may be instituted pursuant to other statutes or ordinances.* (Emphasis added.)

"3. In a hearing under Section 4511.191(F), Revised Code, to determine if the Registrar of Motor Vehicles properly suspended a person's driver's license for refusing to take a chemical test, the fact that such person has been adjudged guilty of the offense of physical control of a motor vehicle while under the influence of intoxicating liquor does not preclude a finding of reasonable ground to believe

that such person was driving while under the influence of alcohol."

Judge Matthias, in his opinion, stated (page 45):

"And in the case of *State* v. *Muzzy, supra* (124 Vt. 222), paragraphs one and two of the syllabus provide:

"1. The right to operate a motor vehicle upon a public street or highway is not a natural or unrestrained right, but a privilege which is subject to reasonable regulation under the police power of the state in the interest of public safety.

"2. A criminal trial on a charge of operating a motor vehicle while under the influence of intoxicating liquor is a distinct and separate proceeding from a hearing to determine whether an operator's license should be suspended because of the holder's refusal to submit to a sobriety test."

Judge Matthias then wrote:

"In view of the foregoing authorities, we are convinced that proceedings under Section 4511.191(F), Revised Code, are civil and administrative in nature and are intended for the protection of the traveling public and are independent of any criminal proceedings which may be instituted pursuant to other statutes or ordinances. Since the proceedings are civil and administrative in nature, rather than criminal, a burden of proof less than proof beyond a reasonable doubt, is sufficient for a valid suspension of a driver's license pursuant to that statute."

By reason of the foregoing findings of this court, conclusions of law, and the foregoing authorities set forth and discussed herein, this court affirms the order of suspension made and entered against the appellant herein, J. T. Jackson, Jr., by the Registrar of Motor Vehicles.

A report of the findings of this court is forwarded forthwith to the Registrar of Motor Vehicles, Driver License Division of the Bureau of Motor Vehicles, Columbus, Ohio, as required by the provisions of Section 4511.191, paragraph (G) of the Revised Code.

*Order affirmed.*